# IN THE SUPREME COURT OF IOWA

No. 12–0064

Filed December 13, 2013

**LARRY D. SCHAEFER** and **ELAINE M. SCHAEFER,**

Appellants,

vs.

**DALE L. PUTNAM, PUTNAM LAW OFFICE,** and **SMP, L.L.C.,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

A farm creditor seeks further review of a court of appeals decision reversing a district court ruling that found it had subject matter jurisdiction to foreclose a mortgage on agricultural property. **DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Dale L. Putnam of Putnam Law Office, Decorah, for appellees.

**ZAGER, Justice**.

In this appeal, we are asked to interpret Iowa Code section 654A.6(1) (2009) when a farm creditor, after being sued regarding the validity of its mortgages, brought a counterclaim to foreclose the mortgages without first obtaining a mediation release. Larry and Elaine Schaefer filed suit against their sons, their former attorney, Dale Putnam, a limited liability company, SMP, L.L.C. (SMP), and others. SMP, without first seeking mediation, counterclaimed to foreclose on a mortgage granted by the Schaefers on their agricultural property. The district court foreclosed the mortgage. After the district court denied the Schaefers' motion to quash or stay the sheriff's sale, they appealed, arguing that the district court lacked subject matter jurisdiction to foreclose on the agricultural property without SMP first obtaining the mediation release required by Iowa Code section 654A.6(1). The court of appeals agreed and reversed the district court. We granted further review. For the reasons set forth below, we conclude SMP was not required to obtain the mediation release prior to filing a counterclaim to foreclose its mortgage. We therefore reverse the court of appeals on this issue and affirm the decision of the district court.

### I. Background Facts and Proceedings.[1]

In 1998, Land O' Lakes obtained a judgment against Larry Schaefer for $127,125 plus interest. After the judgment, Larry Schaefer transferred by quitclaim deed, for no consideration, real property located in Oklahoma to his wife Elaine. After Land O' Lakes commenced a

---

[1]The procedural history of this case is lengthy and complex. However, some history regarding the facts leading up to the current dispute will be instructive.

fraudulent-transfer action against Larry and Elaine Schaefer[2] in Oklahoma, it obtained a judgment for $161,749.19. The Oklahoma judgment amount represented the original judgment against Larry plus accrued interest and costs.

On January 12, 2001, G.R.D. Investments L.L.C. (G.R.D.) filed its "Articles of Organization" with the Iowa Secretary of State, naming the Schaefers as the managers of G.R.D. The Schaefers entered into an employment agreement with G.R.D., which entitled Larry and Elaine each to health insurance and a salary. G.R.D.'s operating agreement named Raymond and Dean Schaefer, the Schaefers' sons,[3] as the initial members of G.R.D. The purpose of G.R.D., according to the operating agreement, was to purchase, sell, and rent real estate. G.R.D. was formed with the assistance of the Schaefers' attorney, Dale Putnam.[4]

In January 2001, the Schaefers transferred by quitclaim deed all of their nonexempt real property to G.R.D. The property consisted of approximately 160 acres of farmland and other real estate on which houses and buildings were situated. The Schaefers retained forty acres of real estate in Cerro Gordo County, which they claimed as their forty-acre homestead. After the transfer of the real property, Liberty Bank, F.S.B.[5] loaned money to G.R.D., and G.R.D. executed and delivered to

---

[2]We will refer individually to Larry Schaefer and Elaine Schaefer as Larry and Elaine. We will refer collectively to Larry and Elaine Schaefer as the Schaefers.

[3]To avoid confusion with Larry and Elaine Schaefer (Schaefers), we will refer to Raymond and Dean Schaefer as Raymond and Dean.

[4]We will refer collectively to Dale Putnam and Putnam Law Office as Putnam.

[5]Liberty Bank, F.S.B. is successor by merger of Hancock County Bank & Trust. The loans in question were actually made by Hancock County Bank, but for purposes of clarity, we refer to the lender as Liberty Bank, which was a party to this suit, though it has no role in this appeal.

Liberty Bank mortgages on the real property transferred previously by the Schaefers to G.R.D.

In July 2001, Land O' Lakes filed a complaint in the United States District Court for the Northern District of Iowa seeking to enforce its judgment against the 160 acres of farmland, despite the Schaefers' purported transfer of the farmland to G.R.D. Afterwards, Land O' Lakes and the Schaefers discussed settlement. In May 2003, the parties reached a settlement agreement under which the Schaefers agreed to pay Land O' Lakes $85,000.

On April 2, the Schaefers executed a promissory note for $85,000 payable to G.R.D. A mortgage on the Schaefers' previously retained forty-acre homestead, executed the same day, secured the note. On May 1, G.R.D. borrowed $275,000 from Liberty Bank and executed a promissory note. G.R.D. then loaned the Schaefers $85,000. On May 12, the Schaefers tendered to Land O' Lakes the settlement funds.

In October 2003, the Schaefers filed for Chapter 7 bankruptcy. On March 30, 2004, the bankruptcy trustee filed a complaint seeking to avoid as fraudulent the January 2001 transfers by the Schaefers to G.R.D. The bankruptcy court afterward voided the 2001 transfers under the Bankruptcy Code.[6] *See* 11 U.S.C. § 548 (2000). As a result of the bankruptcy ruling, the trustee had the authority to take control of the real property, liquidate it, and distribute sale proceeds to the Schaefers' creditors.

To prevent the trustee from selling the real property, the Schaefers had to pay their creditors, the trustee's fees, and the trustee's attorney

---

[6]The effect of this bankruptcy ruling on who held title to the real property was examined in *Schaefer v. Schaefer*, 795 N.W.2d 494, 502 (Iowa 2011).

fees. The Schaefers borrowed the necessary money from SMP. In late 2005, the Schaefers executed four promissory notes payable to SMP and granted SMP a mortgage on certain real property. Also, on June 8, 2006, G.R.D. assigned to SMP the mortgage on the forty-acre homestead dated April 2, 2003, which secured the $85,000 promissory note with the same date. The Schaefers defaulted on the notes.

On September 23, 2008, the Schaefers filed their petition at law for declaratory relief against Putnam, SMP, G.R.D., Raymond and Dean, and Liberty Bank.[7] The Schaefers alleged Putnam negligently advised them with respect to their bankruptcy and the formation of G.R.D. The Schaefers also alleged Putnam and SMP breached their fiduciary duties to the Schaefers. According to the petition, these breaches of fiduciary duties rendered the mortgages delivered to SMP unenforceable.

Both Putnam and SMP filed answers and counterclaims. Putnam counterclaimed for unpaid attorney fees. SMP counterclaimed seeking to foreclose all its mortgages, including the $85,000 mortgage on the forty-acre homestead. With respect to the mortgage on the forty-acre homestead, SMP's counterclaim contended that "[d]ue to the Plaintiff's filing their Petition, and the claim of SMP constituting a compulsory counterclaim, there is no requirement for mediation or a Notice to Cure." In their answer to SMP's counterclaim, among their other responses, the Schaefers "den[ied] the allegations . . . with respect to the requirement for mediation."

The district court bifurcated the proceedings and commenced a jury trial on February 8, 2011. The jury reached a verdict on March 4 in

---

[7]Because this appeal addresses only the claims and counterclaims among the Schaefers, Putnam, and SMP, only the facts and proceedings relevant to those claims have been set forth here.

which it rejected the Schaefers' claims against Putnam. The jury returned a verdict in favor of Putnam on his counterclaim for unpaid attorney fees. Accordingly, the court dismissed the claims against Putnam and entered judgment for him in the amount of $12,200. The court later denied all of the Schaefers' posttrial motions.

On June 6, the district court issued its findings of fact and conclusions of law regarding SMP's counterclaims to foreclose its mortgages. Based on its findings and conclusions, the court entered judgment in rem in favor of SMP for $149,596.80 plus $86,079.25 in attorney fees and foreclosed the mortgage on the forty-acre homestead.[8]

On September 7, on behalf of Putnam, a "Notice of Sheriff's Levy and Sale" was issued notifying the Schaefers of the sheriff's intent to sell the Schaefers' right to appeal the district court's June 6 order. The sale was scheduled for November 17. Also on September 7, on behalf of SMP, a "Notice of Sheriff's Levy and Sale" was issued informing the Schaefers the sheriff planned to liquidate the foreclosed real property, including the forty-acre homestead. The sale was scheduled for December 8, and the notice indicated the sale was not subject to a right of redemption.

On November 3, the Schaefers filed a motion to quash, seeking to prevent the sale of their appeal rights. The Schaefers argued the right to appeal was not subject to levy under Iowa Code section 626.21. Putnam resisted, arguing the right to appeal is like any other asset, and as such, is subject to execution. On November 15, the district court found that Putnam, as a judgment creditor of the Schaefers, may levy on appeal rights relating to the claims brought *by* the Schaefers. Putnam could

---

[8]In the same order, the district court also foreclosed an additional mortgage that secured the four additional promissory notes, totaling $476,148.39.

not, however, levy on the appeal rights of the claims brought *against* the Schaefers. The court ordered the sheriff's sale cancelled. Following receipt of another levy and sale notice, this one reflecting the district court's order narrowing Putnam's right to levy on the appeal rights, the Schaefers sought again to quash the sale. Again, SMP resisted. The district court denied the second motion to quash.

On November 30, the Schaefers filed another motion to quash, this time seeking to prevent the sale of the forty-acre homestead. The Schaefers argued for the first time that under Iowa Code chapter 654A the district court lacked subject matter jurisdiction to foreclose the forty-acre homestead. According to the Schaefers, the forty-acre homestead was agricultural property under Iowa Code chapter 654A, and SMP did not obtain a mediation release prior to asserting its counterclaim seeking foreclosure. The mediation release, the Schaefers argued, was a jurisdictional prerequisite to the district court's subject matter jurisdiction over the foreclosure proceeding. The Schaefers asserted the sale of the forty-acre homestead should therefore be quashed or stayed. In addition to contesting jurisdiction, the Schaefers asserted the sale should be subject to a right of redemption. SMP resisted.

On December 7, the district court denied the Schaefers' motion to quash the Sheriff's sale of the forty-acre homestead. Nevertheless, noting that SMP agreed that the forty-acre homestead was agricultural property, the court found the sale should be subject to a one-year right of redemption.

On January 6, 2012, the Schaefers appealed the district court's ruling denying their motion to quash the sale of the forty-acre homestead. On March 8, the Schaefers appealed the court's ruling denying their motion to quash the sale of their appeal rights. We

consolidated the two appeals and transferred the case to the court of appeals.

In February 2013, the court of appeals issued its opinion. Finding that Iowa Code section 626.21 permits creditors to levy upon "things in action" and that the rights of the Schaefers to appeal the affirmative claims brought by them were just such "things," the court held the district court did not abuse its discretion when it denied the Schaefers' motion to quash the levy and sale of their appeal rights. The Schaefers do not seek further review of the court's holding affirming the district court.

The court of appeals did, however, reverse the foreclosure of the forty-acre homestead. As they had at the district court, the Schaefers argued the court lacked subject matter jurisdiction to hear SMP's counterclaim seeking foreclosure because SMP did not first obtain the mediation release required by Iowa Code section 654A.6(1). SMP countered that the mediation requirement did not apply to its counterclaim because it did not "desire" to "initiate" the foreclosure proceeding, which SMP asserted was a compulsory counterclaim under Iowa Rule of Civil Procedure 1.241.

The court did not determine whether the foreclosure proceeding was a compulsory counterclaim. Rather, based on the court's examination of the legislative history of chapter 654A and our precedent, the court of appeals concluded the legislature intended a broad construction of the mediation requirement to protect farmers facing foreclosure. Adopting this broad construction, the court of appeals held the phrase "desiring to initiate a proceeding" used in Iowa Code section 654A.6(1)(*a*) encompassed the filing of a counterclaim. Because SMP had not obtained a mediation release before asserting its counterclaim, it had

not met the jurisdictional prerequisites of section 654A.6(1). The court of appeals concluded, therefore, that the district court lacked subject matter jurisdiction to hear SMP's foreclosure counterclaim.

SMP sought further review, which we granted to interpret Iowa Code section 654A.6(1).

## II. Standard of Review.

We review subject matter jurisdiction rulings for correction of errors at law. *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006); *see also* Iowa R. App. P. 6.907. "A 'court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.' " *Klinge*, 725 N.W.2d at 15 (quoting *Tigges v. City of Ames*, 356 N.W.2d 503, 512 (Iowa 1984)). Questions of statutory construction also are reviewed for corrections of legal error. *Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R.*, 826 N.W.2d 507, 510 (Iowa 2013); *cf. Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999) (ruling compelling mandatory arbitration under Iowa Code section 679A.1 is reviewed for correction of errors at law).

## III. Discussion.

On further review, we have discretion to review any issues raised on appeal, whether or not they were raised in the application for further review. *Chamberlain, L.L.C. v. City of Ames*, 757 N.W.2d 644, 648 (Iowa 2008). We here choose not to review the court of appeals' affirmance of the trial court's denial of the Schaefers' motion to quash the sale of their appeal rights. Therefore, the court of appeals decision on that issue stands. *Cf. Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009) (holding court of appeals decision stood on issues not addressed on further review).

The sole issue before us is whether a farm creditor that brings a compulsory counterclaim to foreclose agricultural property is subject to the mandatory mediation requirement contained in Iowa Code section 654A.6(1)(*a*) (2009).[9]  On further review, SMP makes two arguments. First, SMP contends it did not desire to initiate the proceeding to foreclose the mortgage on the forty-acre homestead.  Second, SMP argues the Schaefers could have pursued voluntary mediation under Iowa Code section 654A.5, the voluntary mediation provision.  The Schaefers' failure to do so, according to SMP, relieved SMP of the obligation to seek mediation under section 654A.6(1), the mandatory mediation provision.

The Schaefers urge us to broadly interpret section 654A.6(1), which would prevent SMP from bringing its counterclaim prior to pursuing mediation.  The Schaefers assert we should not address SMP's second argument, which they note SMP did not raise at the court of appeals.  Alternatively, the Schaefers insist their election not to mediate under the voluntary mediation provision has no effect on the jurisdictional requirement that SMP first seek mediation under the mandatory mediation provision.

**A.  Compulsory Counterclaim.**  As a preliminary matter, we must determine whether SMP's counterclaim to foreclose on the forty-acre homestead was indeed compulsory.  The court of appeals did not answer this question.  Under Iowa Rule of Civil Procedure 1.241, a party who fails to raise a compulsory counterclaim loses the claim.  *See* Iowa R. Civ. P. 1.241.  A compulsory counterclaim is a claim that arises out of the same transaction or occurrence that is the basis of the opposing party's claim if the following are true: (1) the claim is then matured, (2) the claim

---

[9]Unless otherwise noted, all references are to the 2009 Iowa Code.

is not the subject of any other pending action, (3) the claim is held by the pleader against the opposing party, and (4) the claim does not require the presence of necessary parties over whom the court cannot acquire jurisdiction. Iowa R. Civ. P. 1.241 official cmt; *Harrington v. Polk Cnty. Fed. Savs. & Loan Ass'n of Des Moines*, 196 N.W.2d 543, 545 (Iowa 1972). In order to determine whether a claim arises out of the same transaction or occurrence, we ask whether there is any logical relation between the plaintiff's claim and the counterclaim. *Harrington*, 196 N.W.2d at 545. SMP's foreclosure counterclaim was logically related to the Schaefers' claim. In fact, the Schaefers' petition sought to have the mortgages declared unenforceable because, they alleged, SMP had breached its fiduciary duties to the Schaefers. *See Farmers State Bank v. Cook*, 251 Iowa 942, 948, 103 N.W.2d 704, 707 (1960) (finding counterclaim to foreclose on a trailer was compulsory after buyer sought damages for breach of warranty). A counterclaim is mature when the party possessing the claim "is entitled to a legal remedy." *Sky View Fin., Inc. v. Bellinger*, 554 N.W.2d 694, 697 (Iowa 1996). SMP's claim to foreclose on the forty-acre homestead was mature because the Schaefers were in default on the mortgage and promissory note.

The other elements of a compulsory counterclaim are also met. The foreclosure action was not pending at the time the Schaefers filed their petition, it was held by SMP against the Schaefers, and the foreclosure action did not require the presence of parties over whom the district court could not acquire jurisdiction. Accordingly, SMP's right to foreclose the mortgage on the forty-acre homestead clearly was a compulsory counterclaim in the Schaefers' action to declare that mortgage invalid.

**B. Statutory Interpretation.** This case requires us to interpret the language of Iowa Code section 654A.6(1). In doing so, we apply well-settled principles:

> "The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction."

*State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013) (quoting *In re Estate of Bockwoldt*, 814 N.W.2d 215, 223 (Iowa 2012)).

1. *The provenance and purpose of farm mediation in Iowa.* Before proceeding to analyze the terms of the mandatory mediation statute, it is helpful to examine its history and the events that culminated in its enactment. We examine the statute's legislative history and the circumstances under which it was enacted to aid our understanding of the legislature's intent. *See* Iowa Code § 4.6(2) (permitting courts when resolving ambiguity to examine the circumstances of a statute's enactment); *Romer*, 832 N.W.2d at 176 (noting we consider legislative history when interpreting an ambiguous statute); *State v. Lindell*, 828 N.W.2d 1, 5 (Iowa 2013) ("We also consider the legislative history of a statute when determining legislative intent."). The history of chapter 654A and the circumstances under which it was enacted offer support for our ultimate interpretation of the mandatory mediation provision.

In the late 1970s and early 1980s, sudden economic changes "caused the bottom to fall out of the U.S. farm economy." Bethany Verhoef Brands et al., *The Iowa Mediation Service: An Empirical Study of Iowa Attorneys' Views on Mandatory Farm Mediation*, 79 Iowa L. Rev.

653, 661 (1994) [hereinafter Brands]; *see also* Leonard L. Riskin, *Two Concepts of Mediation in the FmHA's Farmer–Lender Mediation Program*, 45 Admin. L. Rev. 21, 25–26 (1993) (describing the onset of the farm crisis). The bust followed a boom. Brands, 79 Iowa L. Rev. at 657–63 (contrasting the 1970s with the 1980s). In the 1970s, world agricultural commodity markets vastly expanded, agricultural land prices rapidly increased, and credit for farmers freely flowed. *See id.* at 658–61. When the farm crisis descended, farmers who had taken on heavy debt burdens could no longer manage the interest payments on those debts. *Id.* at 665. Lenders responded by foreclosing on real property or seeking to recover farm machinery shortly after loans became delinquent. *Id.* The crisis not only devastated farms, small banks, and agribusinesses, but also destroyed farmers and their families. *See id.* at 665–67. Substance abuse, violence, and suicide tore through Iowa's farm communities. *See id.* at 667.

In response, advocacy groups formed to aid distressed farmers. *Id.* They established hotlines and held workshops to inform farmers of their rights. *Id.* at 668. They gathered media attention. *Id.* Members of the clergy, social workers, and healthcare professionals visited farmers and their families, but attorneys capable of handling farmers' legal problems were scarce. *Id.* at 668–69.

In 1985, disparate groups including farmers, mediators, and creditors created a voluntary mediation program to ease tensions between farmers and creditors. *See id.* at 672–73. The next year, the Iowa legislature, by enacting Iowa Code chapter 654A, went a step further and mandated a creditor seek mediation in some cases before it could proceed to foreclosure. *See* 1986 Iowa Acts ch. 1214, § 19 (codified

at Iowa Code § 654A.6(1) (1987)).[10]  It also enacted that same year the voluntary mediation provision.  *See id.* § 18 (codified at Iowa Code § 654A.5 (1987)).  The legislature found specifically that foreclosure threatened farmers who were unable to make mortgage payments, that the farm crisis affected all rural businesses, and that the "agricultural sector of the economy of this state [was] under severe financial stress." *Id.* § 1.  The legislature further noted "[t]he agricultural economic emergency require[d] an orderly process . . . to adjust agricultural indebtedness to preserve the general welfare and fiscal integrity of the state." *Id.*  Interpreting the statute shortly after it was enacted, we described a "general legislative intent to give some relief to farmers in dire financial straits." *First Nat'l Bank in Lenox v. Heimke,* 407 N.W.2d 344, 346 (Iowa 1987).

2. *The terms of the mandatory mediation provision.*  We have had few opportunities to review Iowa Code section 654A.6.  *See generally Kent Feeds, Inc. v. Manthei,* 646 N.W.2d 87, 89–90 (Iowa 2002) (holding on a narrow reading of chapter 654A that the mandatory mediation provision does not require a creditor to engage in mediation before pursuing a

---

[10]Like Iowa, other states have passed statutes mandating that creditors seek mediation or provide debtors notice of the chance to mediate before foreclosing on agricultural property.  *See, e.g.*, Ark. Code Ann. § 2-7-302 (West, Westlaw current through 2013 Reg. and First Ex. Sess.); Minn. Stat. Ann. § 583.26 (West, Westlaw current through 2013 First Special Sess.); S.D. Codified Laws § 54-13-10 (Westlaw current through 2013 Reg. Sess.).  Some states have provided for voluntary mediation schemes before agricultural property foreclosure.  *See, e.g.*, Neb. Rev. Stat. Ann. § 2-4808 (Westlaw current through 2013 Reg. Sess.); Or. Rev. Stat. Ann. § 36.256 (West, Westlaw current through 2013 Reg. and Special Sess.); Wis. Stat. Ann. § 93.50 (West, Westlaw current through 2013 Wis. Act 57).  Still other states have adopted mediation programs that apply to residential property foreclosures generally.  *See, e.g.*, Conn. Gen. Stat. Ann. § 8-265ee (Westlaw current through 2013 Reg. and Special Sess.); Me. Rev. Stat. Ann. tit. 14, § 6321-A (Westlaw current through 2013 First Reg. Sess. and First Special Sess. of the 126th Legis.).  Our research has not revealed another case involving facts analogous to those presented by this case.

personal judgment); *Prod. Credit Ass'n of the Midlands v. Shirley*, 485 N.W.2d 469, 471 (Iowa 1992) (explaining section 654A.6 stays proceedings until a creditor obtains a mediation release); *Graham v. Baker*, 447 N.W.2d 397, 399 (Iowa 1989) ("The procedural requirements imposed by the statute mandate only that a creditor request mediation and participate therein."); *Heimke*, 407 N.W.2d at 346 (holding the mandatory mediation provision is retrospectively applicable).

Chapter 654A applies to "borrowers" who are operating farms. Iowa Code § 654A.4(2). The chapter applies to creditors of those borrowers with a secured debt of at least twenty thousand dollars against the borrower. *Id.* § 654A.4(1). Under the chapter a "creditor" is, among other things, "the holder of a mortgage on agricultural property." *Id.* § 654A.1(3) (emphasis omitted).

The mandatory mediation provision, Iowa Code section 654A.6(1)(*a*), in relevant part provides, "A creditor . . . desiring to initiate a proceeding to enforce a debt against agricultural property which is real estate under chapter 654 . . . shall file a request for mediation with the farm mediation service." The phrase "initiate a proceeding to enforce a debt" could mean Iowa Code section 654A.6(1)(*a*) requires only that a creditor bringing the initial claim first seek mediation. The district court adopted this interpretation, and accordingly, found it was not deprived of jurisdiction to hear SMP's foreclosure counterclaim.

It is not apparent from the plain language, however, that section 654A.6 is so limited in scope. The phrase could also be interpreted more broadly to require mediation prior to a counterclaimant's action to enforce a debt, which, if so interpreted, would deprive the district court of jurisdiction in this case. The Schaefers urge this interpretation, the same one adopted by the court of appeals. We agree the statute is

susceptible of two interpretations and reasonable persons could disagree. *See Bockwoldt,* 814 N.W.2d at 223. The statute is ambiguous and "we must turn to the principles of statutory construction." *Id.*

We examine this statute in its entirety when determining the legislature's intent. *See Romer,* 832 N.W.2d at 176; *see also Lindell,* 828 N.W.2d at 5 (noting we consider the context in which statutory terms are used); *Hardin Cnty. Drainage Dist. 55,* 826 N.W.2d at 512 ("We also examine statutory language holistically."). Although on further review SMP directs much of its argument toward insisting the court of appeals placed insufficient emphasis on what SMP actually "desired," the real crux of this dispute is what it means to "initiate" a proceeding under the mandatory mediation provision. *See* Iowa Code § 654A.6(1)(*a*). We believe Iowa Code section 654A.6 does not require a creditor to seek mediation before asserting a compulsory counterclaim against a creditor.

The legislature left "initiate" undefined. Therefore, " 'we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage' " to ascertain the meaning of the word. *Iowa Dental Ass'n v. Iowa Ins. Div.,* 831 N.W.2d 138, 145 (Iowa 2013) (quoting *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998)). The dictionary definitions of "initiate" are "to cause or facilitate the beginning of" and "set going." *Merriam Webster's Collegiate Dictionary* 644 (11th ed. 2004). Black's Law Dictionary also defines initiate: "Commence; start; originate; introduce; inchoate." *Black's Law Dictionary* 784 (6th ed. 1990). In Iowa Code section 654A.6, then, "initiate" means to start or commence. Read with this meaning, the mandatory mediation provision mandates a creditor first seek mediation before it starts a proceeding. *See* Iowa Code § 654A.6(1)(*a*). On the other hand, a creditor named as a defendant in a proceeding, like SMP in this

case, by a borrower, like the Schaefers in this case, need not seek mediation because the creditor did not start the proceeding.

The word "initiates" appears again in section of 654A.6(1). Iowa Code section 654A.6(1)(*b*), the jurisdictional prerequisite provision, which directly impinges on this dispute, provides that the requirements of the mandatory mediation provision "are jurisdictional prerequisites to a creditor filing a civil action that initiates a proceeding subject to [chapter 654A]."[11] This provision is noteworthy for its similarity to Iowa's procedural rule governing the commencement of actions. That rule provides, "For all purposes, a civil action is commenced by filing a petition with the court." Iowa R. Civ. P. 1.301(1). As noted above, one definition of "initiate" is "commence." *Black's Law Dictionary* at 784. The initiation of a civil action is thus achieved by filing a petition with a court. *See* Iowa R. Civ. P. 1.301(1). Because we interpret statutes and court rules so as to harmonize them with one another, we do not view the jurisdictional prerequisite provision as an effort by the legislature to alter the method of commencing a civil action for these particular suits. *Cf. Jud. Branch v. Iowa Dist. Ct.*, 800 N.W.2d 569, 576 (Iowa 2011) (explaining that when interpreting statutes we seek to harmonize them with statutes on the same topic). Rather, we view the jurisdictional prerequisite provision only as requiring a creditor to first comply with the mandatory mediation requirements before it starts a civil action in the manner prescribed by the rules of civil of procedure. The provision has no effect on compulsory counterclaimants, who do not start civil actions.

---

[11]We acknowledge the specific definition of "[f]ile" for purposes of chapter 654A, *see* Iowa Code § 654A.1(5) (emphasis omitted), but we do not interpret that definition to apply to "filing" within the jurisdictional prerequisite provision.

The mandatory mediation provision displays one final indication it poses no impediment to a creditor asserting a compulsory counterclaim to foreclose without first seeking mediation. Section 654A.6(1)(*a*) provides that until the creditor receives a mediation release or until a court determines that the creditor would suffer irreparable harm by mediating, the "creditor shall not *begin* the proceeding subject to this chapter." Iowa Code § 654A.6(1)(*a*) (emphasis added). This provision bars a creditor, like SMP, from starting a proceeding before first satisfying either of the two conditions to suit. SMP did not seek mediation and it did not seek a determination that it would suffer irreparable harm by mediating, but it did not need to. By definition, a compulsory counterclaim does not begin an action. *See* Iowa R. Civ. P. 1.241 (requiring a party's responsive pleading to contain any matured claim arising out of the same transaction or occurrence not already part of the pending action); Iowa R. Civ. P. 1.242 (permitting a party to counterclaim on any matured claim "held by the party when the action was originally commenced").

In this case, it was the Schaefers that filed the petition with the court, thus commencing the action. *See* Iowa R. Civ. P. 1.301(1). Nothing in the mandatory mediation provision prohibited the Schaefers from starting the action because they were borrowers, not creditors. *See* Iowa Code § 654A.6(1). Once the action had commenced, nothing in the statute precluded SMP from raising its foreclosure counterclaim, even though SMP is a creditor. The mandatory mediation statute requires a creditor "desiring to" start "a proceeding" to file a mediation request with the farm mediation service. *Id.* § 654A.6(1)(*a*). When SMP filed its compulsory counterclaim, it did not start the proceeding, nor is there any indication in the record SMP desired to start such a proceeding until it

was confronted with the Schaefers' initial claim. The statute by its terms inhibits only a creditor's ability to initiate a proceeding. *See* Iowa Code § 654A.6(1)(*a*).

3. *Mandatory mediation and subject matter jurisdiction.* That leaves open the question of the effect of the jurisdictional prerequisite provision in this case. We have never passed on the effect of the jurisdictional prerequisite provision contained in section 654A.6(1). We have though reviewed a nearly identical provision in a similar statute, Iowa Code section 654B.3 (2005). *See Klinge*, 725 N.W.2d at 17–18. The general assembly enacted chapter 654B in 1990 because it found the new chapter "necessary to extend programs enacted in 1986 to provide legal assistance to farmers suffering financial distress and to provide farmer-creditor mediation services." 1990 Iowa Acts ch. 1143, § 1.

The substance of chapters 654A and 654B is similar. Chapter 654B applies to certain types of farm disputes. *See* Iowa Code § 654B.3. Section 654B.3(1) prescribes that "[a] person who is a farm resident, or other party, desiring to initiate a civil proceeding to resolve a dispute, shall file a request for mediation with the farm mediation service." *Id.* § 654B.3(1)(*a*); *see also Klinge,* 725 N.W.2d at 17–18 (explaining the consequences of an amendment to section 654B.3(1)). Section 654B.3(1) prohibits commencing a "proceeding until the person receives a mediation release," unless pursuing mediation would cause "irreparable harm."[12] Iowa Code § 654B.3(1)(*a*)(1).

Neither chapter 654A nor chapter 654B, as originally enacted, contained a jurisdictional prerequisite provision. Only after a 1999

---

[12]Iowa Code section 654B.3(1) permits another exception, which is not available under chapter 654A and not applicable to this case, if the "dispute involves a claim which has been brought as a class action." Iowa Code § 654B.3(1)(*a*)(2).

federal district court ruling did the legislature amend the statutes to resolve any lingering doubt as to the effects of a litigant's failure to comply with the statutes' mediation requirements. In *Rutter v. Carroll's Foods of the Midwest, Inc.*, a group of property owners in Clay County, Iowa sued Carroll's Foods of the Midwest, Inc. (CFM), to enjoin the establishment of a pig nursery and confinement facility. 50 F. Supp. 2d 876, 877–78 (N.D. Iowa 1999). CFM removed the case to federal court and filed a motion to dismiss for lack of subject matter jurisdiction. *Id.* at 878. CFM asserted that the property owners, except for one couple, failed to comply with the mandatory mediation requirement in chapter 654B, which CFM viewed as a prerequisite to suit. *Id.* The property owners resisted. *Id.*

The federal court first found that the property owners, except for one couple, failed to fulfill "the prerequisite of obtaining a mediation release before pursuing this action." *Id.* at 880. The court then examined "whether the mediation release requirement is in fact 'jurisdictional,' or merely a condition precedent to suit, and hence whether failure to obtain such a release requires dismissal for lack of subject matter jurisdiction, as CFM contends." *Id.* at 882. Noting the national dearth of authority on the specific question, the court "*roughly*" analogized the mediation release requirement to the requirement that employment discrimination plaintiffs first obtain a right-to-sue letter from the appropriate agency before pursuing a civil suit for discrimination. *Id.* Under Title VII, the court found, the right-to-sue letter is a " 'condition precedent' " to suit, not a " 'jurisdictional prerequisite' " to suit, meaning the defect could be cured after the filing of a suit. *Id.*; *see also* 42 U.S.C. § 2000e-5 (1994). The court also distinguished *Swanger v. Iowa*, 445 N.W.2d 344 (Iowa 1989), in which

we held that the exhaustion of administrative remedies was jurisdictional, on the basis that Iowa waives sovereign immunity, "a jurisdictional matter," only after the requirements of the relevant statute have been met. *Rutter*, 50 F. Supp. 2d at 882 (citing *Swanger*, 445 N.W.2d at 346–47). "[B]y analogy to comparable cases," the federal court concluded that obtaining the mediation release under Iowa Code chapter 654B was a condition precedent to suit, meaning the court did not have to dismiss the case for lack of subject matter jurisdiction.[13] *See id.* at 882–83 (explaining that the defect of failing to obtain a mediation release is "curable after suit has been filed"); *cf. Walsh v. Larsen*, 705 N.W.2d 638, 641–43 (S.D. 2005) (relying on *Rutter* and concluding that South Dakota's mandatory mediation provision in agricultural foreclosure statute was not jurisdictional).

---

[13]Subject matter jurisdiction is " 'the authority of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.' " *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989) (quoting *Wederath v. Brant*, 287 N.W.2d 591, 594 (Iowa 1980)). Subject matter jurisdiction is conferred by the constitution or by statute, and parties cannot confer on a court subject matter jurisdiction. *Klinge*, 725 N.W.2d at 15. If a court that lacked subject matter jurisdiction enters a judgment, "the judgment is void and subject to collateral attack." *Id.* at 16.

Subject matter jurisdiction is distinct from a court's authority to hear a particular case. *See id.* (explaining Iowa courts' increasing care with regard to distinguishing between subject matter jurisdiction and authority to hear a case). A court may have subject matter jurisdiction over a case, but nevertheless "may not be able to entertain the particular case." *Christie*, 448 N.W.2d at 450. In such a situation, and despite having subject matter jurisdiction, the court lacks authority to hear the case. *See id.* The distinction is important because a judgment "entered without authority is voidable rather than void." *Klinge*, 725 N.W.2d at 16. Unlike subject matter jurisdiction, which may not be conferred on a court by the parties, a "court's *authority* can be obviated by consent, waiver or estoppel." *State v. Mandacino*, 509 N.W.2d 481, 483 (Iowa 1993). " Thus if a party waives the court's [lack of] authority to hear a particular case, the judgment becomes final and is not subject to collateral attack.' " *Klinge*, 725 N.W.2d at 16 (quoting *In re Estate of Falck*, 672 N.W.2d 785, 790 (Iowa 2003)).

In 2000, after the *Rutter* case, the Iowa legislature amended Iowa Code chapters 654A and 654B. *See* 2000 Iowa Acts ch. 1129, §§ 1–2 (codified at Iowa Code § 654A.6(1)(*b*) (2001); *id.* § 654B.3(1)(*b*)). The amendment to chapter 654A, which is nearly the same as the amendment to chapter 654B,[14] clarified that the mandatory mediation requirements in section 654A.6(1)(*a*) "are jurisdictional prerequisites to a creditor filing a civil action that initiates a proceeding subject to this chapter." *Id.* § 1 (codified at Iowa Code § 654A.6(1)(*b*)). The explanation that accompanied the introduced version of the legislation states:

> This bill amends the mandatory mediation provisions of two Code sections relating to resolution of farm disputes. The bill specifies that the mediation requirements in Code sections 654A.6 and 654B.3 are jurisdictional prerequisites that must be satisfied before a case can be filed under those chapters. A 1999 federal district court ruling held that the current Code language did not prevent the filing of a suit under chapter 654B prior to mediation of the dispute.

H.F. 2521, 78th G.A., 2d Sess., explanation (Iowa 2000). There were no relevant amendments before the bill's enactment.

In 2006, we had the chance to examine section 654B.3 in light of *Rutter* and the 2000 amendment. *Klinge*, 725 N.W.2d at 16–18. In *Klinge*, the parties entered into a contract covering the raising and feeding of pigs. *Id.* at 14. Klinge sued Bentien for breach of contract in small claims court, and Bentien counterclaimed for negligence. *Id.* Neither party was represented by counsel, and neither party sought mediation under chapter 654B. *Id.* After the small claims court entered judgment in favor of both parties, Klinge appealed to the district court.

---

[14]The amendment to chapter 654B clarifies that the requirements of section 654B.3(1)(*a*) "are jurisdictional prerequisites to a *person* filing a civil action that initiates a civil proceeding to resolve a dispute subject to this chapter." 2000 Iowa Acts ch. 1129, § 2 (codified at Iowa Code § 654B.3(1)(*b*)) (emphasis added).

*Id.* The district court found a lack of evidence to support either claim, but because Bentien did not appeal, it ordered that the judgment against Bentien must stand. *Id.* at 15.

Bentien's newly hired attorney then sent the district court a letter to draw its attention to Iowa Code chapter 654B. *Id.* The attorney argued that the court lacked jurisdiction because neither party sought mediation, but the district court refused to take further action. *Id.* On appeal to this court, Bentien sought dismissal and argued both the small claims court and district court lacked subject matter jurisdiction. *Id.*

After finding that chapter 654B was applicable to the parties and to their dispute, we examined the consequences under chapter 654B of failing to obtain a mediation release prior to bringing suit. *Id.* at 16–18. We first explained that in *Rutter*, the federal district court used terms different than we would have used to articulate the same legal concepts. *Id.* at 17 (citing *Rutter*, 50 F. Supp. 2d at 882–83). The *Rutter* court "used 'jurisdictional prerequisite' to refer to subject matter jurisdiction and 'condition precedent' to refer to the authority of a court to hear a case." *Id.* (quoting *Rutter*, 50 F. Supp. 2d at 882). Instead, "we would have articulated the issue as a matter of the court's authority to hear the particular case rather than a condition precedent to suit." *Id.* at 18.

After addressing those semantic differences, we turned to the 2000 amendment to chapter 654B. *Id.* We viewed the timing of the amendment, which followed closely on the heels of *Rutter*, the use of the phrase "jurisdictional prerequisites" in both *Rutter* and the 2000 amendment to chapter 654B, and the bill's explanatory statement as indicative of the legislature's intent to guide a different result than that reached in *Rutter*. *See id.* at 17–18 (explaining reasoning behind the conclusion that "the legislature intended a different result than that of

the *Rutter* decision"). We therefore concluded that, under chapter 654B, "the legislature intended obtaining a mediation release from the farm mediation service to be a prerequisite to subject matter jurisdiction." *Id.* at 18. Accordingly, we held the small claims and district court decisions were void for lack of subject matter jurisdiction. *Id.* As we noted in *Klinge*,

> The legislature may create jurisdictional prerequisites to subject matter jurisdiction. In this case, the parties are not deprived of their day in court. The legislature has merely made a policy decision that farm disputes shall be mediated before a suit is filed.

*Id.* at 18 n.2.

There is no reason in this case to depart from our holding in *Klinge*. A farm creditor's failure to comply with the mandatory mediation requirements under Iowa Code section 654A.6(1), as with a litigant's failure to mediate under section 654B.3(1), deprives the district court of subject matter jurisdiction to hear the claim. *Compare* Iowa Code § 654A.6(1)(*b*), *with id.* § 654B.3(1)(*b*); *see also Klinge*, 725 N.W.2d at 18 (holding failure by the plaintiff to mediate under Iowa Code section 654B.3 deprived the district court of subject matter jurisdiction). As we explained above, however, the jurisdictional prerequisite provision's effect is limited. In amending section 654A.6(1) in 2000, the legislature was careful to impose a jurisdictional impediment only when a "creditor fil[es] a civil action that initiates a proceeding." Iowa Code § 654A.6(1)(*b*). Because SMP did not file a civil action, but rather filed a compulsory counterclaim, the jurisdictional prerequisite provision was not implicated. Therefore, the district court did have jurisdiction to foreclose the mortgage on the forty-acre homestead, just as it had jurisdiction to foreclose the other mortgage at issue in the case.

The history and purposes of chapter 654A, both its initial enactment and subsequent amendment, confirm our view that the mandatory mediation provision does not require a creditor to mediate before raising a compulsory counterclaim. The mandatory mediation provision sensibly slows down the foreclosure process by placing in front of creditors a procedural hurdle. *See Graham*, 447 N.W.2d at 399 (explaining the "requirements placed upon creditors by chapter 654A are procedural, adding an additional step in the process required for forfeiture"); *Heimke*, 407 N.W.2d at 346 (explaining the provision adds an additional procedure in the foreclosure process). The purposes of the farm mediation statute would not be served by requiring a creditor to first seek mediation before raising a compulsory counterclaim. Once a borrower initiates a civil action against a creditor, there is no process to slow down because both parties are already in court. Once the Schaefers filed suit against SMP, there was no possibility mediation would ease tensions between the two parties. The well was poisoned. There is no reason to expect at that point the Schaefers would have derived any benefit from a debt adjustment process directed only toward the mortgage on their agricultural property, especially when as part of the same case the Schaefers faced foreclosure of another mortgage for which the mediation statute offered no protection.

Moreover, despite SMP acknowledging in its counterclaim the applicability of the farm mediation statute, the Schaefers did not move to have the claim dismissed. They held back their jurisdictional challenge and reduced a laudable statute, enacted to protect beleaguered farmers, to a tactic, withheld until the end of trial and only then deployed to forestall the sale of judicially foreclosed real estate.

The Schaefers chose to go on the offensive and litigate against their creditor, SMP. In doing so, the Schaefers put into issue the very mortgage over which they now argue they should have had the chance to mediate. As SMP points out, the Schaefers eschewed the orderly adjustment process available to them under the voluntary mediation provision. That provision permits either a borrower "or a creditor of that borrower" to "request mediation of the indebtedness by applying to the farm mediation service." Iowa Code § 654A.5. The choice by a borrower not to pursue voluntary mediation does not relieve a creditor of its obligation to mediate when required to do so by the mandatory mediation provision. Nevertheless, the decision by the Schaefers not to pursue voluntary mediation demonstrates they did not view the opportunity to adjust or discuss their debts using that process as useful or beneficial. If a borrower bypasses voluntary mediation and proceeds directly to court, and in doing so challenges the enforceability of the very mortgage that would be discussed in mediation, we see no reason why a creditor must first pursue mediation before raising its compulsory counterclaim to enforce that mortgage on the borrower's agricultural property.

**C. Conclusion.** After reviewing the statute's history, the statutory language, and the circumstances under which it was enacted, we conclude the legislature did not intend Iowa Code section 654A.6(1) to require creditors seek mediation before raising a compulsory counterclaim brought to enforce a debt. SMP was not required to satisfy the jurisdictional prerequisites as it was not "filing a civil action that initiate[d] a proceeding" to foreclose the mortgage on the forty-acre homestead. *Id.* § 654A.6(1)(*b*).

**IV. Disposition.**

We vacate the decision of the court of appeals requiring SMP to seek mediation before raising its counterclaim and affirm the judgment of the district court on that issue. We affirm the court of appeals decision and district court judgment on the motion to quash the sale of the Schaefers' appeal rights.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**