# IN THE COURT OF APPEALS OF IOWA

No. 23-1555
Filed November 13, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        The State appeals the district court order placing a sexually violent predator

in transitional release.  **WRIT ANNULLED.**


        Brenna Bird, Attorney General, and Sarah Jennings, Assistant Attorney

General, and Patrick C. Valencia, Deputy Solicitor General, for appellant State.

        Amy Kepes, Assistant State Public Defender, Special Defense Unit, Des

Moines, for appellee.


        Heard by Schumacher, P.J., Badding, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**MULLINS, Senior Judge.**

The State appeals the district court's ruling placing David Stumbo in transitional release from sexually violent predator (SVP) commitment.[1]  The sole question on appeal is whether, under Iowa Code chapter 229A (2023), the court could hear recommendations from Stumbo about his placement after it determined he violated his release plan.  We find the district court acted within its statutory authority when it heard Stumbo's evidence and recommendations.[2]  The writ is annulled.

## I.  Background

In 2015, the court civilly committed Stumbo as a sexually violent predator under chapter 229A.  In 2022, the court determined after an annual review hearing that Stumbo had shown his "mental abnormality has so changed that he is not likely to engage in predatory acts constituting sexually violent offenses if discharged."  So, the Iowa Department of Health and Human Services entered into a stipulation to place Stumbo on release with a supervision plan.  The court adopted the plan, releasing Stumbo.

Several months later, the State petitioned for ex parte revocation of Stumbo's supervised release, alleging that he violated the terms of the plan by communicating with a victim over text.  The court found good cause to grant the

---

[1] The State filed a notice of appeal, which the supreme court recast as a petition for writ of certiorari before it transferred the case to the court of appeals.

[2] The State's second contention on appeal is that its interpretation of Iowa Code section 229A.9B(5) does not violate Stumbo's due process rights.  Because we find no error in the court's statutory interpretation and the district court did not rule there was a constitutional violation, we do not address the issue.  *See State v. Bauler*, 8 N.W.3d 892, 908 (Iowa 2024).  Also, the State is not challenging the merits of the placement decision.

ex parte request, and Stumbo was taken back into custody and returned to a secured facility.

On August 17, the court heard evidence on whether Stumbo violated the terms of his release plan. At the hearing, the State argued the department was the only party allowed to make placement or release recommendations. Stumbo countered that disallowing his argument on the placement decision was inconsistent with the statute and violated his due process rights.

The court informed the parties that it first needed to examine the exhibits offered to decide whether a violation occurred. It further informed them that, if it found a violation, it would hold a hearing the following week on placement. In the meantime, the court accepted briefs on the State's objections to Stumbo giving recommendations. The State had not yet filed the department's placement recommendation. A few days later, the court filed its ruling finding Stumbo violated his release plan.

At the placement hearing, the court reserved ruling on the recommendations question but allowed Stumbo to present evidence and argument as an offer of proof. He presented the expert testimony of a clinical psychologist and argued for a return to release with supervision. The court ordered Stumbo to be returned to a transitional release program over the department's recommendation that he be returned to a secured facility. The ruling incorporated the evidence and recommendations of both parties. Addressing the State's objection, the court ruled

> the decision to be made by the Court is a discretionary one. Consequently, even if the Respondent does not have a right to present any such arguments or evidence as the State suggests, it

seems clear that the Court has the right, in its exercise of discretion, to permit Respondent to provide evidence or argument so that the Court can make the best decision possible on the disputed issue of placement.

The State appeals.

## II.  Standard of Review

"Certiorari is an action at law; therefore, our review is at law."  *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).  "[W]e may examine only the jurisdiction of the district court and the legality of its actions."  *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010) (quoting *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998)).  "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law."  *Christensen*, 578 N.W.2d at 678.  In a certiorari action, "[t]he plaintiff bears the burden to prove the illegality."  *Nash Finch Co. v. City Council of City of Cedar Rapids*, 672 N.W.2d 822, 825 (Iowa 2003) (quoting *City of Grimes v. Polk Cnty. Bd. of Supervisors*, 495 N.W.2d 751, 752 (Iowa 1993)).

## III.  Analysis

The State contends the court exceeded its authority under chapter 229A when it allowed Stumbo to give recommendations on his own placement after it determined he violated his release plan.  The State's contention requires us to engage in statutory interpretation.

"We start with the often-repeated goal of statutory interpretation which is to discover the true intention of the legislature."  *Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003).  The "first step in ascertaining the true intention of the legislature is to look to the statute's language."  *Id.*  "If the statute is

unambiguous, we look no further than the statute's express language." *Kay-Decker v. Iowa State Bd. of Tax Rev.*, 857 N.W.2d 216, 223 (Iowa 2014) (quoting *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011)). "If, however, the statute is ambiguous, we inquire further to determine the legislature's intent in promulgating the statute." *Id.* "A statute is ambiguous when reasonable persons could disagree as to its meaning." *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 261 (Iowa 2010).

The statute in question is section 229A.9B(5), which provides,

If the court determines a [release plan] violation occurred, the court shall receive release recommendations from the department and either order that the committed person be returned to release with supervision or placed in a transitional release program, or be confined in a secure facility. The court may impose further conditions upon the committed person if returned to release with supervision or placed in the transitional release program. If the court determines no violation occurred, the committed person shall be returned to release with supervision.

The State contends the unambiguous language of the statute contemplates only the department providing recommendations and, when the district court heard from Stumbo, it violated this "explicit and mandatory statutory procedure." It further challenges the district court's finding that the evidence it hears is also within its discretion when making the placement decision. Instead, the State urges that although the court has discretion in the ultimate placement decision, the statute removes from its discretion who can provide evidence and release recommendations, limiting those to the department.

To support the explicit and mandatory nature of this provision, the State points to the terms "shall receive" and the omission of any other recommender. It also encourages us to look at older versions of the statute and observes that the

language "shall receive release recommendations from the department" has not changed since its 2002 enactment.[3]   The State also compares the recommendation text to the rest of subsection (5), which uses permissive terms that let the court decide "either"/"or" different placements and that the court "may" impose additional release conditions.

The State also compares the procedure here to the procedure for determining a violation occurred.  Under subsections (3) and (4), the court is required to set a hearing to "determine whether a violation of the conditions of the release plan occurred" where "the burden shall be upon the attorney general to show [the violation] by a preponderance of the evidence."  Iowa Code § 229A.9B(3), (4).  In contrast, subsection (5) does not provide for a separate hearing to determine placement and only requires the court to hear recommendations from the department.  *Id.* § 229A.9B(5).

Stumbo agrees with the State that the statute is unambiguous but reaches the opposite conclusion—that it means the department is not the sole source the court can consider.  We are required to "assess the statute in its entirety, not just isolated words or phrases."  *State v. Howse*, 875 N.W.2d 684, 691 (Iowa 2016) (quoting *Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013)).  In doing so, "[w]e give words their ordinary and common meaning by considering the context within which they are used."  *Id.* (citation omitted).  The plain meaning of the relevant text,

---

[3] There have only been two amendments to this statute.  First, in 2023, references to the "department" were amended to reflect a governmental consolidation of the departments of health and human services.  Second, in 2018, the legislature removed references to release without supervision.  Neither change bears on the present controversy.

"the court shall receive release recommendations from the department," is that the court is required in mandatory language to hear from the department. *See* Iowa Code § 4.1(30)(a)–(c) (explaining "shall" and "must" create a duty and a requirement while "may" confers a power). But the rest of the subsection does not direct the court toward any particular evidence or information, nor does it prohibit the court's consideration of another source.

"Intent may be expressed by the omission, as well as the inclusion, of statutory terms," and the State urges us to consider the omission of other recommenders. *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001). It may be that "when the legislature expressly mentions one thing, it implies the exclusion of other things not specifically mentioned." *Doe v. Iowa Dep't of Hum. Servs.*, 786 N.W.2d 853, 859 (Iowa 2010). But this is not a list of items from which other items are excluded, it is only a requirement that the department gets to make a recommendation the court must consider. *See, e.g.*, *id.* (noting the amendment to the statute listed only six of the previous eight criteria for placement of names on the child abuse registry and determining it intended to exclude the additional criteria); *see also Chesnut v. Montgomery*, 307 F.3d 698, 701 (8th Cir. 2002) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up)). And we should not "interpret statutes to render any part superfluous." *First State Bank v. Clark*, 635 N.W.2d 29, 32 (Iowa 2001). But reading the recommendation subsection as we do does not offend that rule. Viewed in another light, it creates a duty for the department to make a recommendation rather than

remain silent. At the same time, it recognizes that the department is well-situated to provide an informed recommendation since it has been monitoring the committed person through each step of the program and is aware of their prior treatment and condition.

A useful contextual comparison comes from the provisions for a violation when the committed person is in a transitional release program. *See* Iowa Code § 229A.2(16) ("'Transitional release' means a conditional release from a secure facility operated by the department with the conditions of such release set by the court or the department."). In a transitional program, the committed person is still under the direct "control, care, and treatment" of the department. *Id.* § 229A.8A(1). When the State alleges a violation of transitional release, the court must hold a hearing to determine there was a violation. *Id.* § 229A.8A(3)–(4). But, afterward, the statute provides "the court shall either order the committed person to be returned to the transitional release program or to be confined in a secure facility," omitting a requirement that it consider any one party's recommendation. *Id.* § 229A.8B(5).[4]

In contrast, supervised release involves less confinement and supervision from the department and, before the court can order the person released, the department must prepare a plan for "addressing the person's needs for counseling, medication, community support services, residential services, vocational services,

---

[4] That provision goes on to use nearly identical language to its supervised release counterpart: "The court may impose further conditions upon the committed person if returned to the transitional release program. If the court determines no violation occurred, the committed person shall be returned to the transitional release program." Iowa Code § 229A.8B(5).

substance use disorder treatment, sex offender treatment, or any other treatment or supervision necessary." *Id.* § 229A.9A(2). Consequently, the requirement in subsection (5) that the court receive a recommendation from the department aligns with the reality that the committed person was out of close court and departmental supervision before the violation, and the department is capable of providing an informed recommendation. But it does not mean the legislature intended the department to be the sole source of information for the court's decision.

And as to omissions, equally, the legislature omitted language that would make the department the sole recommender, such as "only," "just," or "exclusively." The legislature knows how to impose limits; in the same sentence of the statute, it constrained the court's discretion on placement to just three options. *See* Iowa Code § 229A.9B(5) (limiting placement options to either "the committed person be returned to release with supervision or placed in a transitional release program, or be confined in a secure facility").[5] In our statutory interpretation, "[w]e may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction." *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 133 (Iowa 2011). And reading the provision as written to explicitly exclude input from the committed person would be doing that. In oral argument, the State suggested that

---

[5] The legislature also exhibited its ability to exclude evidence from a factfinder's consideration when it enacted section 229A.8(6)(e), which provides:

> If the director [of the department] has authorized the committed person to petition for discharge or for placement in a transitional release program and the case is before a jury, testimony by a victim of a prior sexually violent offense committed by the person *is not admissible*. If the director has not authorized the petition or the case is before the court, testimony by a victim of a sexually violent offense committed by the person *may be admitted*.

(Emphasis added.)

chapter 299A should be read uniquely as containing an exclusion where one is not explicit, but we see no reason to deviate from our ordinary rules of statutory interpretation for this one code chapter. In addition, "the express language of [a] statute does not produce absurd consequences." *In re J.C.*, 857 N.W.2d 495, 503 (Iowa 2014). And it would be absurd to disallow a committed person from weighing in on their placement—if placement was to be based solely on the department's recommendation, the legislature would not direct the court to make the decision. Instead, the language leaves it within the court's discretion to decide between the three options. In addition, the plain language only requires the court to "receive" the department's input; the court may reject the department's recommendation in its entirety. Iowa Code § 229A.9B(5). The two options cannot be that the court is either bound by the department's recommendation or deciding in a vacuum with limited information in the record.

To support his assertion that both sides must be able to present evidence for the court to exercise its discretion, Stumbo cites *In re Det. of Anderson*. 895 N.W.2d 131, 150 (Iowa 2017). Although that case did not directly address the question before us here, the supreme court found the statutory procedure for revocation of the release-with-supervision status sufficiently safeguards the committed person's substantive and procedural due process rights under the federal and state constitutions. *See id.* In that case both parties presented evidence and argument on the alleged violation, but the facts do not disclose whether they did so regarding the placement decision. *Id.* at 136–37. As part of its due process analysis, the court found the district court's "ability to weigh different [placement] options and determine which is best based on the violation

that occurred" minimized the risk of an erroneous deprivation of Anderson's liberty interests. *Id.* at 149. But the court did not explain what opportunity the parties had to weigh in on the court's decision-making process at this particular step.

So, the only reasonable plain reading is that subsection 299A.9B(5) is among the many statutory provisions where the legislature gives guidance on what must happen but does not state what may not happen. And, although we look to "legislative history of a statute, including prior enactments, when ascertaining legislative intent," the absence of change does not support the State's interpretation automatically either. *Schaefer*, 841 N.W.2d at 75.

In addition, at oral argument, the State cited for the first time *In re Detention of Schuman*, 2 N.W.3d 33 (Iowa 2024), for the proposition that the district court does not have discretion to reject the department's determinations. But that case addressed the process for placing a committed person in transitional release as an initial matter, not a violation of a release plan. *See Schuman*, 2 N.W.3d at 45. In addition, that procedure requires that the treatment provider approve a relapse prevention plan before the court can grant transitional release. *See* Iowa Code § 229A.8A(2)(d). In *Schuman*, the district court found, based on the committed person's expert witness, that the proposed relapse prevention plan was appropriate and "worthy of acceptance," so Schuman met all the statutory eligibility factors for release. 2 N.W.2d at 43. The supreme court reversed, finding that the statute requires the court to find that the relapse prevention plan "has been developed and accepted by the treatment provider," in that case Civil Commitment Unit for Sexual Offenders (CCUSO), before the committed person can be deemed eligible for transitional release. *Id.* at 45. It was undisputed that CCUSO treatment

staff had not accepted the plan. *Id.* The supreme court found the statute did not allow the court to "override that requirement based on the testimony of the offender's expert." *Id.* at 48. Thus *Schuman* is inapplicable because it both interprets a different proceeding and explicitly places the power to accept a release plan in the hands of the treatment provider. *Id.* The court's only job under the plain language of that section was to determine whether the treatment provider accepted the plan; "[i]t either happened or it did not." *Id.* at 47. Contrary to the State's contention, *Schuman* demonstrates that the legislature knows how to put matters that it deems belong in the sole judgment of the treatment providers out of the district court's discretion.

*Schuman* did not involve a challenge to the committed person's right to present evidence in the release with supervision violations proceeding under Iowa Code section 229A.9B. *See id.* at 50–51 (distinguishing between "transitional release—a less restrictive level of treatment" from "discharge or supervised release," where the offender would reside outside the CCUSO and in the community). The State does not cite, and we know of no appellate case that involves a district court refusing to hear the committed person's placement recommendation. We think that is because the plain language of the statute creates a mandatory duty to hear the department's recommendation but does not otherwise cabin the court's ability to hear recommendations from any other source. We cannot conclude that a reasonable person would interpret this to mean the legislature intended to confine the district court's discretion in what it considers in making these decisions. Indeed, it would be difficult in some cases for the court to exercise its discretion without having the necessary evidence. Considering the

statute as a whole, we find it unambiguously requires the court to consider the department's recommendation but does not prohibit the court from exercising its discretion to consider the committed person's evidence and recommendation.

**IV. Conclusion**

We find the State has not met its burden to prove the district court acted illegally.  It correctly determined that subsection 229A.9B(5) allows it to consider placement recommendations beyond that of the department and properly exercised its discretion by hearing from Stumbo, the committed person.  So, we annul the writ.

**WRIT ANNULLED.**