In re the MARRIAGE OF Sheila Estella BALLSTAEDT and David John Ballstaedt, Jr.

Upon the Petition of

Sheila Estella Ballstaedt, Appellee,

And Concerning

David John Ballstaedt, Jr., Appellant,

and Deery Brothers Ford, Inc. and Bellwether Companies, Inc., Intervenor–Appellants.

No. 98–404.

Supreme Court of Iowa.

Feb. 16, 2000.

Michael W. Fay of Fay Law Office, Cedar Rapids, for appellant David John Ballstaedt, Jr.

Richard A. Stefani and Thomas F. Ochs of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for intervenor-appellant Deery Brothers Ford, Inc.

William F. Olinger of William F. Olinger Law Office, Cedar Rapids, for intervenor-appellant Bellwether Companies, Inc.

Pamela J. Lewis, Cedar Rapids, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LARSON, Justice.

This is a dissolution case with many wrinkles. It involves the sale of a business and competing claims to the sale proceeds by two intervenors and a child support recovery unit. The district court ordered that the proceeds be paid to the support recovery unit to be applied to past-due child support and alimony. The former husband and the two intervenors appealed. We reverse and remand.

David Ballstaedt and Sheila Ballstaedt were divorced in 1994. Sheila was awarded primary physical care of the parties' children, and the court ordered David to pay child support and alimony. David was awarded his business called Dave Ballstaedt Ford, Inc. (DBF) in Mount Vernon, Iowa. In 1994, while the dissolution action was pending, David and DBF contracted to sell the business and the real estate on which it was located to John G. Deery, Sr., or his assignee. Proceeds of this installment sale are at the heart of this appeal.

The ownership of the business was apparently mixed. According to some of the evidence, the real estate was owned by David Ballstaedt personally, and the business itself was owned by DBF. The sale agreement did not establish a separate value for the real estate and the remainder of the assets. In fact, the total purchase price was not even stated in the agreement. The price was to be determined based on inventories of new and used cars and parts and additional consideration based on the greater of gross sales or a set monthly amount spread over the five-year life of the contract.

Deery, the buyer, did not pay any of the monthly amounts during the early stages of the contract because it claimed an offset for payments owed to it by the seller. The offset claim arose because during the first four months Deery was operating the Mount Vernon dealership the Ford Motor Company did not recognize it as a Ford franchisee and paid dealer incentives and other adjustments for that period to DBF. David Ballstaedt retained those checks, which the court found totaled approximately $155,000 (an amount disputed by the parties). A bookkeeper for Deery testified that, as of the time of trial, the installments due by Deery totaled $194,952.

In November 1996 an order for mandatory income withholding was served on Deery, seeking funds to be applied to David's delinquent alimony and child support. *See* Iowa Code ch. 252D (1995).

On November 14, 1997, Deery filed a petition to intervene in the dissolution case, asking the court to determine (1) whether the alimony and child support withholding order applied to the proceeds under the purchase agreement, *i.e.*, whether this was "income"; and (2) whether Deery was entitled to deduct any sums owed to it by David or the corporation. The court granted Deery's petition for intervention.

Bellwether Companies, Inc. (to which the sellers had assigned their rights under the contract) filed a petition to intervene on December 12, 1997. Bellwether asked the court to determine that (1) Bellwether was entitled to the money held by Deery, and (2) Deery's obligation under the purchase agreement was not subject to the income-withholding order. Both Sheila and the child support recovery unit opposed Bellwether's intervention. (The court ultimately allowed Bellwether to intervene, but Bellwether claims it was too late; the money it was seeking under its assignment was already disposed of by the court.)

## I. *The Issues.*

Deery raises two issues: the court's denial of its claim of setoff and its ruling on the merits of the case without first ruling on Bellwether's petition for intervention. David Ballstaedt contends the court erred in ruling that Bellwether was not entitled

to the proceeds of the sale, and he contends the withholding order was invalid because he was not served notice of it. (We summarily resolve the notice issue against him. He was not entitled to notice of an immediate withholding order. *See* Iowa Code § 252D.10.)[1] Bellwether raises a single issue: the court's denial of its petition for intervention until it was too late to effectively argue its case.

### III. *Disposition.*

The parties attack the withholding order on three substantive bases: (1) the contract payments by Deery are not "income" under our support-withholding statute; (2) the payments due from Deery are owed in whole or in part to DBF, which, as a corporation, has no support obligation; and (3) any payments under the income-withholding order were subject to a setoff in favor of Deery.

Iowa Code chapter 252D (1995) allows the child support recovery unit to issue an income-withholding order to satisfy support obligations. Section 252D.9 provides:

> Specified sums shall be deducted from the obligor's earnings, trust income, or other income sufficient to pay the support obligation and any judgment established or delinquency accrued under the support order.

In the court's order of January 6, 1998, it found that, as of December 31, 1997, Deery owed David $194,952.87 under the purchase agreement, and David owed Deery $154,668.27, for a difference of $40,284.60 owing from Deery to David. The court ordered this difference to be paid to the child support recovery unit. (The court therefore implicitly ruled, at least temporarily, that Deery's payment could be reduced by the amount Deery had coming from the seller. However, the overall question of offset was delayed for a

later resolution, and the court eventually denied Deery a setoff.)

■ A. *Are the sale proceeds "income"?* Chapter 252D, as it existed as of the time of the hearing in this case, did not provide a definition of income. A dictionary defines it as

> a gain or recurrent benefit that is usu. measured in money and for a given period of time, derives from capital, labor, or a combination of both, includes gains from transactions in capital assets, but excludes unrealized advances in value . . . .

Webster's Third New International Dictionary 1143 (unabr. ed.1986). We believe these contract payments fall within this broad definition of income. We note the legislature has, since this case arose, adopted a similarly broad definition of income. Iowa Code section 252D.16(1) (1999) now provides "income" means all of the following:

> *a.* Any periodic form of payment due an individual, regardless of source, including but not limited to wages, salaries, commissions, bonuses, worker's compensation, disability payments, payments pursuant to a pension or retirement program, and interest.
>
> *b.* A sole payment or lump sum as provided in section 252D.18C.
>
> *c.* Irregular income as defined in section 252D.18B.

The district court was correct in ruling Deery's payments were income under the statute. That does not resolve the ultimate questions, however, which are (1) whether the income is David Ballstaedt's, his corporation's, or both; and (2) whether Deery is entitled to a setoff.

B. *Piercing the corporate veil.* The purchase agreement is not clear as to who owned the assets being sold. The agreement states it is "by and between Dave

---

**1.** David Ballstaedt also contends that the judge should not have ruled on any of the issues in this case because the judge was biased against him. We do not find it neces- sary to address that issue, in view of our ruling that remands the case for a new hearing. The matter of the judge's recusal may be addressed at that time.

Ballstaedt Ford, Inc. and David J. Ballstaedt, Jr., Seller, and John G. Deery, Sr. or assignee, Buyers." The document is signed:

s/ David Ballstaedt, Pres.
Dave Ballstaedt Ford, Inc.,
and David Ballstaedt Jr.
SELLERS

■ David testified that he personally owned the real estate, and the corporation owned the balance of the business assets. The wording of the contract itself supports his claim of a dual ownership. The district court, however, ruled that the corporation's involvement was irrelevant because David was the sole owner of the corporation. It stated:

1. For the purpose of the Order for income withholding, there is no distinction between money owed to the Respondent personally and money owed to Respondent's corporation. Respondent and Respondent's corporation are one and the same and he has commingled and [spent] those funds as if they were.

2. Respondent is entitled to receive income under the terms of the purchase agreement, whether that is personally or as sole shareholder and owner of the corporation need not be decided. Additionally, the Court understands the corporation is substantially indebted to the Respondent and therefore any income coming to the corporation would flow to the Respondent.

3. The issue of whether the Respondent's assignment to Bellwether Companies, Inc., is valid [is] an issue which will be tried at the time Bellwether's Petition for Intervention is tried, and that determination is *not necessary* for the purpose of dealing with Deery's Petition for Intervention.

(Emphasis added.) The gist of the ruling is any sale proceeds received by the corporation were in reality received by David.

■ We cannot agree that, as a matter of law, David Ballstaedt and the corporation are one and the same, as the court concluded. *See Midwest Management Corp. v. Stephens,* 291 N.W.2d 896, 902 (Iowa 1980) (corporations are entities separate from their shareholders). A court may disregard a corporate structure by piercing the corporate veil only under circumstances "where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.,* 412 N.W.2d 593, 597 (Iowa 1987) (quoting *Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805, 810 (Iowa 1978)).

■ The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required. *C. Mac Chambers,* 412 N.W.2d at 598. Factors that would support such a finding include (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham. *Id.* (citing *Briggs Transp. Co.,* 262 N.W.2d at 810).

The district court made no finding with respect to these factors, and we conclude that was error. On remand, the court should hear evidence and make findings as to (1) whether the payments from Deery are to David Ballstaedt or the corporation or both (this will turn on who owned the assets); and (2) if some or all of the payments are to be made to the corporation, the court should consider the factors set out above to determine whether the corporate structure should be pierced.

C. *The right to intervene.* Iowa Rule of Civil Procedure 75 provides for the intervention of interested parties. The version of that rule in effect at the relevant time in this case stated:

Any person interested in the subject matter of the litigation, or the success of

either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both. .

(A new version of rule 75 became effective as of January 24, 1998, but the substance of the rule remains the same.)

■ Intervention is a matter of right to parties interested in the litigation. *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). While the district court allowed Bellwether to intervene, it was too late by that time; the court had already ordered Deery to pay over the proceeds under the support-withholding order. On rehearing, all of the parties to this appeal should be heard on the question of who is entitled to the proceeds.

D. *Deery's right to setoff.* One additional issue should be addressed for the guidance of the district court on remand in the event the court concludes that Deery's contract payments are subject to the income-withholding order. That issue is whether Deery may offset against the seller's claim any amount owed to Deery because of the seller's retention of the Ford checks.

■ Deery lost its offset argument in district court for two reasons stated by the court: (1) the child support and alimony claims had been reduced to judgment before Deery's claim was reduced to judgment (it apparently never has been reduced to judgment), and (2) because "[the withholding order was] for support of minor children and an ex-spouse, [it has] priority over other debts which have not yet been reduced to judgment and which occurred after the [dissolution] Decree in this case."

■ The court held the income-withholding order had priority over Deery's claim, primarily because the income-withholding order was first in time. The issue, however, is not one of timing; the issue is the right to the proceeds. The withholding order could not attach to proceeds that David Ballstaedt himself could not claim. An income-withholding order is a form of garnishment, a "proceeding whereby a plaintiff-creditor (garnishor) seeks to subject to his or her claim the property or money of a third party (garnishee) owed by such party to defendant-debtor (principal defendant)." *Van Maanen v. Van Maanen*, 360 N.W.2d 758, 761 (Iowa 1985). The interest of a garnishor, here the child support recovery unit, is effective only to the extent of David Ballstaedt's interest in the property being garnished. *See Garton v. Garton*, 533 N.W.2d 828, 831 (Iowa 1995).

Under the purchase agreement, Deery owed the seller approximately $195,000 as of December 31, 1997. The seller, however, owed Deery a substantial amount of money because of the checks received by the seller but actually owed to Deery. These checks amount to between $102,000 and $155,000, depending on whose figures are accepted. The amounts owed by the seller to Deery have been owed since February 1995.

■ Setoff is a remedial process by which a court reduces or cancels the claim of a party. *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 188 (Iowa 1987). The doctrine is essentially an equitable one requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other. 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 6, at 232 (1995); *accord Tuttle v. Bisbee*, 144 Iowa 53, 56, 120 N.W. 699, 700–01 (1909). In order to establish the right to a setoff, the demands must be mutual and must exist between the same parties, and be of the same grade and nature or due the same capacity or right. 20 Am.Jur.2d at 233–34. Generally, unliquidated damages cannot be pled as a setoff. *Id.* § 23, at 246. However, even if some items are not liquidated and remain subject to adjustment, items that have been agreed to or that are readi-

ly ascertainable may suffice to constitute a setoff. *Id.*

In this case, it is possible for the court to ascertain both the amount of the checks David Ballstaedt cashed and the amount due under the contract. The claimed setoff is therefore not "unliquidated" for purposes of the setoff rule. In addition, both claims arise from the same purchase agreement, they involve the same parties, and they are "of the same grade or nature." *See* 20 Am.Jur.2d, at 233–34.

We do not condone David Ballstaedt's delinquency in the payment of his child support and alimony obligations. Nevertheless, the fact the income-withholding order is based on alimony and child support claims does not alter the general principles applicable to creditors' rights. *See Garton,* 533 N.W.2d at 833.

The district court on remand should determine whether and to what extent the purchase price is owed to David Ballstaedt in his personal capacity. If the court finds some or all of the amounts due by Deery are due to David Ballstaedt personally and therefore are subject to the withholding order, the court should allow Deery to exercise a right of setoff. As a practical matter, any retrieval of the proceeds already paid to the child support recovery unit will be difficult, and the parties have no suggestion as to how that may be accomplished, if it is necessary. We assume any future contract payments due from Deery may be directed by the court to effect any modification of its previous order that it might determine to be necessary.

We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**