**IN THE COURT OF APPEALS OF IOWA**

No. 13-0867
Filed December 9, 2015

IN THE MATTER OF THE ESTATE OF
ANGEL IBARRA JR., Deceased

BRUCE P. BICKEL, as Administrator of the
Estate of Angel Ibarra Jr., Deceased, BRUCE
P. BICKEL, as Administrator Individually, DARIO
ZAFFARANO, as Attorney for Administrator
and MIA IBARRA and MARIAH IBARRA,
        Intervenors-Appellants/Cross-Appellees,

vs.

ANGEL RAY IBARRA a/k/a ANGEL IBARRA III
and IMT INSURANCE COMPANY,
        Respondents-Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Story County, James C. Ellefson,

Judge.


        The administrator of the estate, his attorney, and two minor heirs appeal

the district court order concerning the disposition of estate assets.  **AFFIRMED**

**AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**


        Dario Zaffarano of White, Zaffarano & Skog, L.L.P., Ames, for appellants

Estate of Angel Ibarra Jr. and Bruce Bickel.

        Mark J. Olberding of Olberding Law Office, Nevada, attorney and guardian

ad litem for appellants Mia Ibarra and Maria Ibarra.

F. Richard Lyford of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee IMT Insurance Company.

John G. Martens of Martens Law Office, Ames, for appellee Angel Ibarra.

Heard by Doyle, P.J., Bower, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BOWER, Judge.**

The administrator of the estate, his attorney (the estate), and two minor heirs appeal the district court order finding the summary procedure in Iowa Code section 633.186(2) (2013) should have been followed by the administrator of the estate and his attorney; the breach of fiduciary duty by the original administrator of the estate does not justify an award of additional extraordinary fees; the 401(k) account funds were properly excluded from the estate for the purposes calculating fees; the "release and waiver" signed by Divina Ibarra acted as a disclaimer, but only to her half interest in the life insurance proceeds. On cross-appeal, IMT Insurance claims its liability to the estate cannot exceed the total amount the original administrator took from the estate. We affirm the district court's order on these issues, except we modify the order to include the 401(k) account funds in the estate for the purpose of calculating fees.

## I. BACKGROUND FACTS AND PROCEEDINGS

We incorporate the district court's statement of the factual background:

Angel Ibarra Jr., was killed in an automobile collision on May 17, 2006. He was divorced and left two adult children: Angel Ray Ibarra and Divina Ibarra. The Protective Life Insurance Company issued a check payable to the estate of Angel Ibarra Jr., in the amount of $32,500.80 on account of Mr. Ibarra's death. When Angel Ray Ibarra attempted to negotiate that check at U.S. Bank in Ames, he learned that an estate would need to be opened. An employee of the bank suggested that Dario Zaffarano would help him to open his father's estate.

Angel Ray Ibarra was appointed administrator of his father's estate on September 18, 2006. IMT Insurance Company posted a $50,000 court officer's bond on September 25, 2006. Mr. Zaffarano was designated as the attorney for the estate. Although the notice to creditors was dated September 26, 2006, the publication of that notice did not occur until over a year later, on October 30, 2007, and November 6, 2007. The affidavit of publication was filed on

February 11, 2008. No explanation is offered for the 13-month delay in publication.

The check from Protective Life Insurance Company was deposited in the U.S. Bank in Ames on September 27, 2006, to an account opened for the estate of Angel Ibarra Jr. At some point, Angel Ray Ibarra learned that his sister, Divina Ibarra, was the beneficiary of a life insurance policy on their father in the amount of $50,000. Angel Ray Ibarra then concluded, completely without justification, that he should receive the proceeds of the Protective Life Insurance policy. Mr. Zaffarano thought that he was being diligent in holding the checks to the estate account in his office. He apparently did not realize that Mr. Ibarra could access the account by other means.

The deposits to the account were the insurance proceeds of $32,500.80, and four earned interest deposits totaling $2.32, for total deposits of $32,503.12.

There was one legitimate withdrawal from the account. Check No. 501, in the amount of $350, paid the IMT bond premium. That check was honored by the bank on October 11, 2006.

Mr. Ibarra began making improper internet transfers to his own account on October 4, 2006, with a transfer of $2000. From October 4, 2006, through January 8, 2007, Mr. Ibarra made 14 internet transfers in the total amount of $25,793.

Mr. Ibarra made two customer withdrawals on December 6, 2006, and January 22, 2007, in a total amount of $4800. He made his first ATM withdrawal on December 11, 2006. From December 11, 2006, through January 26, 2007, Mr. Ibarra made nine ATM withdrawals in the total amount of $1580. His misappropriations totaled $32,173.00. Although the record contains several references to a total embezzlement amount of $32,500.80, including several places where Mr. Ibarra himself uses that number, the correct amount is $32,173.00. This is the amount the successor administrator uses in his statement of facts (brief filed March 15, Statement of Facts, second paragraph), and that is the amount this Court will use.

His January 26, 2007, ATM transaction in the amount of $140 was Mr. Ibarra's final withdrawal. That ATM transaction overdrew the estate checking account by $19.88. Four days later the bank began assessing daily overdraft fees that eventually totaled $304. On March 13, 2007, the bank charged a force-closed account fee of $30, bringing the account to a total negative balance of $353.88. That was comprised of $334 in bank fees and the original $19.88 overdraft caused by the January 26 ATM transaction. Also on March 13, the bank charged off the total overdrawn amount of $353.88 and closed the account with an ending balance of zero.

Mr. Ibarra also failed to file the Report and Inventory in this estate. On June 1, 2007, Mr. Zaffarano filed an Application for Hearing to Show Cause Why Administrator Should Not Be Removed. That application was based entirely on Mr. Ibarra's failure to attend to the Report and Inventory and his failure to communicate with Mr. Zaffarano about the estate, because Mr. Zaffarano did not yet know about the thefts. Mr. Ibarra failed to appear at the hearing on Mr. Zaffarano's application. The court entered an order noting that Mr. Ibarra did not appear, but did not immediately remove Mr. Ibarra. Mr. Zaffarano signed the Report and Inventory and filed it on November 1, 2007. Again, this is roughly contemporaneous with the publication of the notice to creditors that was dated 13 months earlier.

Mr. Zaffarano was not initially aware of the checking account activity because the bank statements went to Mr. Ibarra's home. In early June of 2007, Mr. Zaffarano wrote to the U.S. Bank to obtain copies of the bank statements. He first learned of Mr. Ibarra's misappropriations when he received those statements. Mr. Zaffarano reported Mr. Ibarra's conduct to IMT Insurance Company. Mr. Zaffarano was aware by no later than October 23, 2007, that Divina Ibarra was willing to give up her share of her father's estate in order to minimize the estate's claim against her brother.

The inventory signed by Mr. Zaffarano showed a gross estate for Federal Estate Tax purposes of $87,910 and a total value for Iowa probate purposes of $37,910. The difference was the face value of the life insurance policy that named Divina Ibarra as the beneficiary.

On February 7, 2008, Mr. Zaffarano filed an Application to Remove Current Administrator and To Appoint Successor Administrator. That application repeated the June 1 allegations of lack of communication and failure to file the inventory. The February application also alleged, for the first time in a filing with the court, the history of improper transfers from the estate bank account. Mr. Zaffarano proposed that Attorney Bruce P. Bickel be appointed as the successor administrator. The application proposed a bond for Mr. Bickel of $11,000.

The court appointed Mr. Bickel as successor personal representative on that same date, February 7, 2008, and set his bond at the requested amount of $11,000. In February and March of 2008, the successor administrator and his attorney mailed and published notices of the successor administrator's appointment, disallowed the claim of a credit card company, and obtained approval of their fees for ordinary services and for reimbursement of their expenses. On November 10, 2008, Mr. Lyford filed a request for notice. Nothing of substance happened in the court file

for the next two and a half years. In fact, there was a nearly 39-month gap between the successive actions of the administrator—his application for fees on March 26, 2008, and his application for fees on June 14, 2011. The fee claims show that there was activity behind the scenes, but the three-year time limit for closing the estate expired on November 6, 2010, without any request for an extension. Iowa Code § 633.473.

On October 23, 2007, IMT, through Mr. Bednarz, offered to resolve the issues relating to the bond and Mr. Ibarra's defalcation by paying the net amount that was owed after taking credit for the amount that Angel Ray Ibarra would have received as his inheritance after the expenses of the estate had been paid. Mr. Zaffarano's fees for extraordinary services as of October 23, 2007, would have been $1425. IMT renewed its offer several times.

Mr. Bickel and Mr. Zaffarano did not resolve the theft issue by use of the procedure provided for in Iowa Code section 633.186(2). This subsection provides for a summary enforcement of the bond within the administration of the estate. Instead, the successor administrator and his attorney chose to file suit pursuant to Iowa Code section 633 186(3). That subsection applies if the estate has already been distributed or if the procedure under 633.186(2) is inadequate. The Court is unable to find any basis for concluding that the summary procedure under 633.186(2) was not adequate.

The petition against Angel Ray Ibarra was filed on June 24, 2011, more than three years and four months after Mr. Bickel's appointment as a successor representative. Mr. Bickel and Mr. Zaffarano explained that although drafting of the petition commenced in 2009, its filing was postponed because they were unable to locate Mr. Ibarra and wanted to be certain that they would be able to serve him within the 90 days after filing that is permitted by Iowa R. Civ. P. 1.302(5). Even after the delay in filing the petition, it took 14 months from the time of the filing of the petition in June 2011 until Mr. Ibarra was served on August 28, 2012.

In the petition, Bickel alleged: Angel breached his fiduciary duty by diverting his father's 401(k) assets to himself, by diverting the proceeds from his father's life insurance policy to himself, by diverting the balance of his father's savings account to himself, and by causing the estate to be assessed penalties and interest due to the untimely payment of state and federal taxes. Bickel and Zaffarano requested "delinquency service charges" due to the delay caused by

Angel's breach, and also requested "additional extraordinary fees and costs" for the proceedings to remove Angel as administrator and for the proceedings necessary to obtain a judgment against Angel for the damages to the estate.

On July 5, IMT filed an answer and cross appeal against Angel. IMT claimed since November 2008, it has been "prepared to participate in any effort to resolve the matter pending in this estate." Angel had filed an answer in which he admitted to improperly removing assets from the estate account. He noted, as the sole beneficiary of the 401(k) account, the funds were properly paid to him. Concerning the improper removal of the life insurance funds, Angel requested a judgment only for the amount necessary to pay income taxes, court costs, and attorney and administrator fees relating to the estate. Angel and Divina are the only beneficiaries of the life insurance policy and Divina waived any amount she was due with a signed "release and waiver."

The trial was held on March 15, 2013. Relevant to this appeal, the district court found Divina's waiver of her share of the insurance proceeds acted as a disclaimer and therefore her children were entitled to her disclaimed share. The court found the summary procedure in Iowa Code section 633.186(2) should have been followed by the administrator and attorney for the estate. The court decreased the administrator and attorney's request of fees and expenses from $39,454.49 to $7,583.81, finding the excess amount to be unreasonable and unnecessary. Finally, the court held the estate "shall have judgment against IMT Insurance Company for the same amount as the final judgment against Angel Ray Ibarra. The liability to the estate of Angel Ray Ibarra will be primary, and the

liability to the estate of IMT Insurance Company will be secondary for purposes of fixing the ultimate liability."

The estate appeals and IMT cross-appeals the court's ruling.

## II. STANDARD OF REVIEW

Our review in equity cases is de novo. Iowa Code § 633.33; Iowa R. App. P. 6.907; *Matter of Estate of Wulf*, 526 N.W.2d 154, 156 (Iowa 1994). In equity cases, we are not bound by the district court's factual findings, but we give them weight, especially when considering the credibility of witnesses. Iowa R. App. P. 6.904(3)(g). The allowance of attorney fees in estate actions is left to the considerable discretion of the trial court subject to appellate review. *In re Estate of Petersen*, 570 N.W.2d 463, 465 (Iowa Ct. App. 1997); *see also Wulf*, 526 N.W.2d at 156 (reviewing a district court's application of section 633.199 and noting that "[w]e accord the trial court considerable discretion in taxing executor attorney fees to estates").

## III. DISCUSSION

### A. Iowa Code Section 633.186(2)

The estate claims it properly sought to obtain a judgment against Angel before turning to the summary enforcement procedure in Iowa Code section 633.186(2). The meaning of section 633.186(2) is contested on appeal, therefore we will engage in statutory interpretation to ascertain the legislature's intent. In doing so, we apply the well settled principles of statutory interpretation:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law.

We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013) (internal citations omitted).

Section 633.186(2) provides:

Subject to the provisions of subsection 3 hereof, the court may, upon the breach of the obligation of the bond of a fiduciary, after notice to the obligors on the bond and to such other persons as the court directs, summarily determine the damages as a part of the proceeding for the administration of the estate, and by appropriate process enforce the collection thereof from those liable on the bond. Such determination and enforcement may be made by the court upon its own motion or upon application of a successor fiduciary, or of any other interested person. The court may hear the application at the time of settling the accounts of the defaulting fiduciary or at such other time as the court may direct. Damages shall be assessed on behalf of all interested persons and may be paid over to the successor or other nondefaulting fiduciary and distributed as other assets held by the fiduciary in the fiduciary's official capacity.

The district court found the estate should have used section 633.186(2) to timely close the estate. The court noted:

The statute seems to contemplate proceeding against the surety alone. It requires notice to the "obligors on the bond of a fiduciary" specifically, and to "such other persons as the court directs." Iowa Code § 633.186(2). If the legislature intended to require participation of the fiduciary, the statute would specifically require notice to the fiduciary as well. . . .

If the administrator had proceeded against IMT under section 633.186(2), the least favorable result likely, a judgment against IMT for one-half of the amount stolen, would have collected enough for the estate to have paid the taxes, interest and penalties, the ordinary fees of the administrator and his attorney, extraordinary fees and expenses less than those eventually allowed for the attorney on October 3, 2011, an extraordinary fee for the administrator in a reasonable but probably similar, smaller amount,

and the court costs, and left funds for distribution to Divina Ibarra quite probably in a larger amount than will now be available.

The administrator seeks to justify the delay by contending that the administrator had to go to trial to avoid the possibility that Angel Ray Ibarra would disclaim his interest and his heirs would somehow claim to have been shorted. If that theory is accurate, no estate and no issue in any estate could ever be settled because there would always be the possibility of a disclaimer hanging over the personal representative's head.

A proposal to close this estate on the basis of what could be obtained under the bond could, and should, have been presented to the court for a hearing on notice by no later than the end of 2009. By obtaining approval of the proposed distribution after a hearing on notice, the approval order would have been a final order, Iowa Code § 633.36, and would have the same binding effect as an order after trial. This estate could and should have been closed by very early 2010 at the latest (and a year earlier than that would probably have been a generous allowance of time) and IMT should have been left to pursue Angel Ray Ibarra on its own time, at its own expense, and with relatively little involvement of the estate and no further expense to the estate.

Looking at the "ordinary and common meaning" of the words in section 633.186(2), there is no requirement a judgment must be obtained against the principal (as the estate claims) before the "summary enforcement proceedings in section 633.186(2) are available." Even though section 633.186(2) lacks an explicit requirement for a judgment, the estate points to *In re Estate of Adams* to demonstrate that a judgment must first be obtained against the principal. 599 N.W. 2d 707 (Iowa 1999).

In *Estate of Adams*, following the defalcation of the estate's executor/attorney (Jacobs), the successor executor filed an application for damages against Jacobs and the surety pursuant to section 633.186(2). *Id.* at 708. Jacobs did not respond or resist the application. *Id.* The surety "agreed by stipulation it would pay the estate the full amount of the bond plus interest in

exchange for a release and assignment of the claim against Jacobs." *Id.* The court adopted the stipulation and entered judgment against Jacobs. *Id.* On appeal, Jacobs claimed he was denied procedural due process when judgment was entered against him without allowing him the opportunity to be heard. *Id.* He also claimed section 633.186(2) "only allows for summary determinations of damages caused to the estate; therefore, the court was without power to summarily determine whether he, as a bonded fiduciary, breached his obligations." *Id.* Jacobs thought the successor executor should have filed a separate action against Jacobs. *Id.* In reversing the district court, our supreme court reasoned:

> Iowa Code section 633.186(2) clearly provides a summary procedure for assessing liability against a surety, the assumption being that the principal has been found liable. In the instant case, the statute was used to summarily find the principal liable based on the surety's admission of liability. The statute is not written to be applied in this manner and we find no legislative intent to do so.

*Id.* at 710–11.

In the present case, the district court noted:

> *Adams* contains the following language: "Iowa Code section 633.186(2) clearly provides a summary procedure for assessing liability against a surety, *the assumption being that the principal has been found liable.*" (emphasis added). This italicized phrase does seem to point toward a conclusion different than the one reached here, and this Court is clearly bound to follow any statement of the law made by the supreme court. The italicized phrase was not necessary to the *Adams* decision. Restatement § 68[(2)][1] seems to

---

[1] (2) When, in an action by the obligee against the secondary obligor to enforce the secondary obligation, (i) a judgment is given in favor of the obligee and (ii) the secondary obligor seeks recovery from the principal obligor pursuant to §§ 21–31, the principal obligor is bound as to any determination of fact common to the two litigants if:
    (a) the principal obligor was a party to the action against the secondary obligor; or

suggest that suit may be maintained against the surety alone, as does *Ellyson v. Lord*,[2] 99 N.W. 582, 588 (Iowa 1904).

We agree with the district court that our supreme court's language in the italicized quote above is dicta for the purposes of the *Adams* decision. However, our supreme court's sentiment on assuming the principal's liability before proceeding against a surety's is not inapposite to the district court's ruling and this opinion. The assumption of liability can be defined by the bond agreement between the principal and surety. *See* John W. Hinchey, *Surety's Performance over Protest of Principal: Considerations and Risks*, 22 Tort & Ins. L.J. 133, 134 (1986) (explaining the obligation of a surety to the obligee, "unless otherwise provided by statute, the obligee may ignore the principal and call upon the surety to perform the principal's contract: 'Although the surety's obligation depends upon a valid obligation of the principal, the surety may be sued immediately when the principal becomes liable . . . on an obligation covered by the surety contract, unless the surety contract or statute provides otherwise.'" (citation omitted)). The court officer bond executed between IMT and Angel provides both parties are "jointly and severally" bound for the payment of $50,000. The bond goes on to state, "The Surety or Sureties on this bond shall be liable for all money or

---

(b) the principal obligor is charged with notice of the secondary obligation, and the secondary obligor gave the principal obligor reasonable notice of the obligee's action against the secondary obligor and an opportunity to join in its defense.

Restatement (Third) of Suretyship & Guaranty § 68 (1996)

[2] In *Ellyson*, the court found the sureties were liable for interest on the penalty of the bond from the time of the administrator's breach, and the administrator had to account for an amount exceeding the bond amount. *Id.* at 588. "In this state it has been held that sureties on an additional bond of a guardian are liable for funds already misappropriated, and not finally accounted for." *Id.*

property that may come into the hands of the principal at any time during his possession of said office, and *shall be responsible for a default in the performance of the Principal's obligations and duties hereunder.*" (emphasis added).

Angel defaulted on the court officer bond when he absconded with the life insurance funds at the end of January 2007. Angel's default on his duties as principal triggered IMT's liability for the absconded funds. Angel's liability can be assumed and the successor administrator should have proceeded against IMT to obtain a judgment or settlement (we believe there is a difference between assumed liability and liability established through judicial action). Pursuant to the holding in *Adams*, the judgment or settlement would solely be entered against IMT. *Adams*, 599 N.W. 2d at 710–11 (finding executor could not be found liable through sureties admission of liability). IMT would receive a release and assignment of the estate's claim, and be left to pursue Angel for his default on the court officer bond. IMT's subsequent action against Angel would satisfy Angel's right to procedural due process on the issue of his liability.

In summary, given the clear and unambiguous language in Iowa Code section 633.186(2), the joint and several liability established in the court officer bond, and Angel's clear default on his duties as administrator, the successor administrator should have used section 633.186(2) to obtain a judgment or settlement with IMT. We find there is no requirement that judgment must first be entered against the principal before the surety can be held liable for the bond, and we affirm the district court's ruling.

**B.      Damages Due the Estate**

The estate claims the "true measure of damages" should be based on the full amount of embezzled estate assets and an amount based on the subtraction of Angel's portion of the estate.    It also claims due to Angel's actions, the successor administrator and the estate's attorney require "extraordinary fees," and the district court should not have reduced their extraordinary fee request. Finally, it claims the district court wrongly excluded the value of the 401(k) account passing to Angel from the gross estate in its calculation of administrator and attorney fees.

**1. Set-off**

The estate claims the district court should not have reduced the judgment against Angel for his defalcation as administrator, as there is no difference in the fiduciary obligation or responsibility for an administrator who is also a beneficiary from one who is not.

In granting Angel a "set-off" for his portion of the estate, the district court reasoned:

> The doctrine of set-off provides that the demands of mutually indebted parties are to be set off against each other and that only the balance will be recovered.  *In re Marriage of Ballstaedt*, 606 N.W.2d 345 (Iowa 2000); *Baltimore & Ohio Ry Co. v. Jameson*, 13 W.Va. 833, 1878 W.L. 3143 (1878) (agent who embezzled from employer entitled to offset for the commissions he earned from his employer); *Candler v. Von Martels*, 11 Ohio Dec. Reprint 744, 1892 W.L. 364 (Super. Ct. of Cincinnati 1892) (set-off of administrator's fees that were disallowed for dereliction).
> Because Mr. Ibarra is an heir with an entitlement to an inheritance that is independent of his former position as administrator, it is easier to conclude he is entitled to a set-off than it would be if he was entitled to compensation as an employee or fiduciary, as in Jameson or Candler.  Mr. Ibarra is entitled to a

credit for the amount he would have inherited, that is, one-half of the net estate.

We agree with the district court's holding, but rely on principles of equity to justify subtracting Angel's share of the estate from the judgment against him. In *In Re Ferris' Estate*, the Iowa Supreme Court determined the distributive share of an heir, who was also a debtor to the estate pursuant to a promissory note but not a fiduciary to the estate, should be offset to satisfy his debt. 14 N.W.2d 889, 900 (Iowa 1944). The court characterized this act as:

> [A] right in the nature of a right of retainer. It is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain moral, as well as legal, duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought in morals and law to restore it. The doctrine of equitable retainer is based upon the principle that he who seeks equity must do equity.
> . . . .
> The right, in our opinion, rests not so much upon any rule of setoff or of retainer as upon the broad principles of equity. That the principle is not based upon any technical rule or distinction, but upon justice, equity, honesty and fair dealing . . .

*Id.* at 898–99 (citations omitted).

While Angel served as an administrator to the estate, he was also a beneficiary of the estate. We agree with the district court's decision to hold Angel liable for the entire estate pursuant to his role as an administrator. *See* Iowa Code § 633.157 ("Every fiduciary shall be liable for, and chargeable in the fiduciary's accounts with, all of the estate that comes into the fiduciary's possession at any time, including all the income therefrom . . . ."). However, pursuant to his role as a beneficiary of the estate, we find "the broad principles of equity" and "justice" allows the judgment against Angel to be offset by the share he would have received as beneficiary. We agree with the district court's

equitable decision to subtract the amount Angel would have received from the estate from the judgement. We affirm the district court's method of calculating the judgment against Angel.

### 2. Extraordinary Fees

"When fees for extraordinary services are claimed, the burden is on the claimant to show both the necessity and value of the services . . . rendered." *Bass v. Bass*, 196 N.W.2d 433, 435 (Iowa 1972). There is no established definition for extraordinary services. *In re Estate of Randeris*, 523 N.W.2d 600, 606 n.1 (Iowa Ct. App. 1994). Generally, however, extraordinary services are those which in character and amount are beyond those usually required. *In re Estate of Mabie*, 401 N.W.2d 29, 31 (Iowa 1987). "In making an allowance for extraordinary services, the critical issue concerns the reasonable value of the services performed, as well as the compensation allowed for the ordinary services." *Estate of Randeris*, 523 N.W.2d at 606 n.1. "In the end, the goal is to provide fair and reasonable compensation for all services performed." *Id.* Iowa Code section 633.199 provides a guideline for determining extraordinary services:

> Such further allowances as are just and reasonable may be made by the court to personal representatives and their attorneys for actual necessary and extraordinary expenses and services. Necessary and extraordinary services shall be construed to include but not be limited to services in connection with real estate, tax issues, disputed matters, nonprobate assets, reopening the estate, location of unknown and lost heirs and beneficiaries, and management and disposition of unusual assets. Relevant factors to be considered in determining the value of such services shall include but not be limited to the following:
> 1. Time necessarily spent by the personal representatives and their attorneys.

2. Nature of the matters or issues and the extent of the services provided.

3. Complexity of the issues and the importance of the issues to the estate.

4. Responsibilities assumed.

5. Resolution.

6. Experience and expertise of the personal representatives and their attorneys.

At trial, the administrator and the attorney proposed $39,454.49 in total fees and expenses. The court found this proposal unreasonable:

> In short, Angel Ray Ibarra's embezzlement did cause losses to the estate and required extraordinary services on the part of both the administrator and the attorney, but the approach taken by the administrator and the attorney, if compensated as they propose, would cause more loss than the theft. The administrator asserts in his brief of March 15 that "The Administrator and Attorney Zaffarano have been denied payment of the fees ordered by the Court in March of 2008 solely because of the embezzlement of Angel Ray." The Court rejects that contention and wishes to do so in the clearest terms possible. The delay in collecting reasonable and necessary fees is due at least as much to the tactics of the administrator and attorney as to the original embezzlement. They did not use § 633.186(2), and they refused to engage in settlement discussions. The administrator observes in his billing record that there was no point to settlement because Mr. Ibarra "will probably be unable to make payment on the judgment anyway." This analysis was backwards. That is a consideration in favor of wasting no more time and money on pursuing an uncollectable judgment. The administrator and the attorney refused to even provide Mr. Ibarra's counsel with a debt calculation or settlement demand. If this had been their case, that is, if they had been the harmed parties, they would have had every right to insist on going to court. But when, as here, they were acting as fiduciaries, they had an obligation to work for the best interest of the estate. Their assessment of their fiduciary obligations as requiring them to go to trial was mistaken.

The court ultimately set the total fees and expenses at $7,583.81, which we also believe is a reasonable sum. Since we agree with the court the administrator and attorney should have used section 633.186(2) to collect the

bond to mitigate losses to the estate, we affirm the district court's calculation of fees and expenses.

### 3. 401(k) Account

The estate claims the district court improperly excluded the 401(k) account listing Angel as the sole beneficiary from the gross estate, and therefore should not have reduced the previously ordered administrator and attorney fees.

The district court decided to exclude the 401(k) account (totaling $2087) from the gross estate and reduce the previously approved fees by two percent. For this proposition, the district court cited Iowa Code section 633.357(5), which acts to exclude custodial independent retirement accounts (IRA) from a probate estate. Our supreme court addressed this issue in *In re Estate of Martin*, and held a 401(k) account should be included "in the gross assets to be considered in the calculation of the maximum fees payable under sections 633.197 and 633.198." 710 N.W.2d 536, 541 (Iowa 2006). We believe this is the correct holding in the present case and reverse the district court's exclusion of the 401(k) account from the probate estate.

## C.    Disclaimer

Lastly, the estate claims it properly sought a declaratory judgment on whether Divina's release and waiver should be treated as a full disclaimer, and not as a partial disclaimer. IMT claims the court should not have found Divina's "release and waiver" was a disclaimer, instead it should be construed as a release of any claims she had against the funds or as a gift to Angel. Angel

agrees with IMT's claim, but also claims, in the alternative, that if we find Divina's waiver was a disclaimer he is entitled to her share.

Iowa Code section 633E.5 sets the general requirements for a person's power to disclaim, "in whole or in part, any interest in or power over property . . . whenever and however acquired." Iowa Code § 633E.5(1).

> To be effective, a disclaimer must be in a writing or other record, declare the disclaimer, describe the interest or power disclaimed, be signed by the person making the disclaimer, and be delivered or filed in the manner provided in section 633E.12. In this subsection, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

*Id.* § 633E.5(3).

The district court relied on section 633E.5(3) to evaluate the "release and waiver" signed by Divina, and concluded it was an effective disclaimer of Divina's interest. The court also found the disclaimer acted as a partial disclaimer and only applied to her interest in the life insurance funds taken by Angel. The disclaimer did not apply to funds already in Divina's possession.

We agree with the district court and find Divina's "release and waiver" is a partial disclaimer to the funds she would have received from her father's life insurance policy. The text[3] of the "release and waiver" limits its applicability to the life insurance funds since the other property she inherited from the estate was already in her possession at the time the "release and waiver" was

---

[3] Paragraph 10 of the release and waiver states: "I waive, relinquish and forego any money I would otherwise have received from the $32,503.61 removed from my father's estate." The last paragraph states: "I, Divina Ibarra, state that I have read the foregoing 'Release and Waiver of Claim of Divina Ibarra to Assets of the Estate of Angel Ibarra Jr.' and I understand that I am knowingly and willingly waiving my right to receive further funds from the estate of my father, Angel Ibarra."

executed. The "release and waiver" also directly states it was only meant to apply to Divina's receipt of the life insurance proceeds. Upon our de novo review, we affirm the district court.

**D.      IMT Liability to the Estate (Cross-Appeal)**

On cross-appeal, IMT claims its liability cannot exceed the total amount Angel took from the estate, which is $32,501, the value of the life insurance policy. We decline to fully reach this issue as we have found in IMT's favor on the other claims and therefore IMT's liability could not exceed the value of the life insurance policy.

**IV.      CONCLUSION**

We affirm the district court order as to all the issues, except we modify the order to include the 401(k) in the estate assets for the calculation of administrator and attorney fees. Their fees should be increased by 2% or an additional $41.74.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**