# IN THE COURT OF APPEALS OF IOWA

No. 17-1198
Filed November 7, 2018

**JAKS PROPERTIES, LLC,**
    Plaintiff-Appellant,

**vs.**

**ST. CROIX HOSPICE, LLC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

JAKS Properties, LLC, appeals from the district court's adverse ruling on cross-motions for summary judgment in its suit against St. Croix Hospice, LLC. **REVERSED WITH DIRECTIONS.**

Justin J. Dalton of Dalton Law, PLC, Urbandale, and David L. Wetsch of Wetsch, Abbot, Osborn, PLC, Des Moines, for appellant.

Sarah K. Franklin and Elizabeth R. Meyer of Davis Brown Law Firm, Des Moines, for appellee.

Heard by Danilson, C.J., Potterfield and Doyle, JJ.

**DANILSON, Chief Judge.**

JAKS Properties, LLC (JAKS) appeals from the district court's adverse ruling on cross-motions for summary judgment in its suit against St. Croix Hospice, LLC (St. Croix). We conclude St. Croix did not waive arbitration procedures, St. Jude Healthcare, LLC (St. Jude) is a necessary party to this action, and the proper relief for failing to bring in a necessary party is for the court to order the party brought in. Because the court dismissed the action, we reverse.

**I. Background Facts and Proceedings**.

This is an action filed pursuant to Iowa Code sections 626.33 and 626.34 to require a determination of the nature and extent of a third party's interest in monies in an escrow account for purposes of enforcing a judgment lien arising from the third party's confession of judgment. What initially was a landlord-tenant relationship between the first two "players" identified below became a much more complicated contractual relationship between all three "players." After the initial lease agreement, a sublease of a portion of leased property was executed, and two of the players, St. Jude and St. Croix, entered into an asset purchase agreement and an escrow agreement. In short, JAKS seeks some of the monies existing in the escrow account for payment on its judgment.

*The players:*

(1) JAKS is the successor in interest to the rights of Park Avenue Partners 2 L.C. (Park Avenue) and is the owner of a large commercial office building we will refer to simply as Crossroads.

(2) St. Jude entered into a ten-year lease (Master Lease) for 13,710 square feet of Crossroads on July 16, 2014. St. Jude is not a party to this action.

(3) St. Croix entered into a May 19, 2015 sublease with St. Jude for 3808 square feet of Crossroads (the Urbandale Sublease).

*The prelude:*

*St. Croix and St. Jude enter an asset purchase agreement.* On May 21, 2015, St. Croix (as buyer) entered into an asset purchase agreement with St. Jude (as seller).  Section 9 provided Delaware law governed the agreement and required "[a]ny dispute, controversy or claim arising out of or relating to this agreement or any transaction document, or the breach thereof" was to be settled by binding arbitration.

Section 10.1(b) of the asset purchase agreement states:

> Subject to the other provisions of this Article 10 [relating to indemnification], after the closing, [St. Jude] and the equity holders, jointly and severally, agree to indemnify and hold [St. Croix and its managers, members, officers, directors, partners, affiliates, agents, successors, and assigns] harmless from any and all losses . . . (iv) based upon, attributable to or resulting from or related to the excluded liabilities and the excluded assets.

Section 2.4 of the asset purchase agreement defined "excluded liabilities." Pertinent portions of that section provide:

> Except as and to the extent that specifically set forth in section 2.3, [St. Croix] shall not assume by virtue of this agreement . . . and shall have no liability for, any liabilities, duties, responsibilities or other obligations of [St. Jude] . . . including, without limitation . . . (h) any liabilities with respect to the Master Lease underlying the Urbandale Sublease (other than with respect to the Urbandale Sublease) . . . .  The excluded liabilities and excluded assets shall be and remain the responsibility of [St. Jude].

Section 10.3(e) provides:

> In the case of any amount payable to any indemnified party pursuant to Article 10 hereof, the indemnified party shall forward to the indemnifying party notice of any sums due and owing by the

indemnifying party pursuant to this agreement with respect to such matter and the claim shall be satisfied as follows:

(i) In the case of any amount payable to [St. Croix and its managers, members, officers, directors, partners, affiliates, agents, successors, and assigns], (i) such amount shall first be satisfied subject to the provisions of the escrow agreement, from the escrow amount . . . .

*The escrow agreement.* The escrow agreement with an escrow fund of $900,000 was executed on May 21 as well. Section 3.1.4 provides, in part:

[I]f on or before the final disbursement date, the escrow agent shall have received from [St. Croix] written notice of any pending claim or claims for indemnification pursuant to Article 10 of the purchase agreement (an "open claim notice"), the escrow agent shall reserve within the escrow fund, and withhold from disbursement to the representative . . . the amount specified in such open claim notice for so long as the open claim notice has not been withdrawn by [St. Croix] . . . .

Under Section 9.5.2 of the escrow agreement, "Any dispute, controversy or claim arising out of or relating to this escrow agreement, or the breach thereof, shall be settled by binding arbitration" in Delaware, and "[t]he parties and the escrow agent hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction" of the courts in the state of Delaware.

Section 10.4 provides, "This escrow agreement shall inure to the benefit of, and be binding upon, the parties hereto and their successors and assigns, except as is expressly provided to the contrary."

*The consent to sublease.* Also on May 21, 2015, Raymond Gazzo, as managing member of Park Avenue, executed a consent to St. Croix's sublease of a portion of Crossroads, subject to the following conditions:

(1) The lessee as well as the sub-lessee shall remain liable to the lessor for all of the lessee's duties under the [Master Lease].

(2) This consent to sublease shall permit the lessee to sub-lease to the sub-lessee and to no other person or entity and is not a

continuing consent to sub-lease in the event the sub-lease to the sub-lessee is terminated, and the lessee and sub-lessee are prohibited from further sub-leasing all or portion of the premises without the express written consent of the lessor.

(3) The lessee's sub-lease to sub-lessee shall obligate sub-lessee to adhere to all of the lessee's duties under the lease any breach of which by lessee or sub-lessee shall be a basis for lessor's remedies set out in the lease against both the lessee and sub-lessee.

*Additional pertinent facts.*

On November 19, 2015, Park Avenue sold Crossroads to JAKS and assigned St Jude's lease to JAKS.

St. Croix placed $900,000 into the escrow fund. Pursuant to the escrow agreement, an initial disbursement of $360,000 was made to St. Jude on November 21, 2015.

On May 20, 2016, JAKS sent a notice of default and opportunity to cure and an accompanying letter to St. Croix and St. Jude in which it stated St. Jude "has failed to make its May rent payment to JAKS and has further informed JAKS that it is insolvent and does not expect to satisfy future rent obligations." Further, the notice stated:

St. Croix is a co-obligor of all lessee obligations under the [Master] Lease. St. Croix is therefore responsible for any default in non-payment of rents or other lessee obligations under the lease. Any limitation of liability among and between St. Croix and St. Jude under the [Urbandale] Sublease has no bearing on your common obligations to JAKS under the Lease.

JAKS informed St. Croix and St. Jude of a thirty-day opportunity to cure the default. If not cured, "JAKS will then pursue legal action against St. Croix and St. Jude to collect past and future rents, costs of securing a substitute tenant (including TI build-out costs and broker fees), liquidated damages under the

[Master] Lease*,* property damage beyond ordinary wear and tear, and other consequential damages."

On July 13, 2016, St. Croix delivered an open claim notice to the escrow agent, which states in part.

> At this time [St. Croix] does not know the amount of the claim, but believes in good faith that the amount of the foregoing claim may exceed the amount of the remaining escrow fund. Accordingly, [St. Croix] hereby requests that in accordance with Section 3.1.2 of the escrow agreement, that the escrow agent withhold from disbursement to the representative any disbursements until such time as [St. Croix] and [St. Jude] deliver a disbursement notice (as defined in the escrow agreement)[1] to the escrow agent.

St. Croix has not released its open claim notice.

On September 28, 2016, counsel for JAKS provided counsel for St. Croix various "lease scenarios" wherein JAKS estimated that St. Croix's potential exposure under the Master Lease could range from $490,002 to $1,354,752.

On December 27, 2016, St. Jude signed a confession of judgment in favor of JAKS in the amount of $407,600.

---

[1] Section 3.1.5 defines a "disbursement notice" as either (1) a written instruction signed by *both* St. Croix and St. Jude specifying the amount or (2)

> a written instruction signed by [St. Croix, the buyer] or [St. Jude, the representative], as applicable, specifying the amount to be disbursed to the buyer or the representative, as applicable**,** as evidenced by a final order which shall have been rendered by a court, arbitration board or administrative agency of competent jurisdiction and the expiration of the time in which to appeal therefrom, or a settlement which shall have been consummated by the buyer and the representative (a "final order instruction"). The escrow agent shall act on a joint written instructions or a final order instruction without further question, and shall deliver to the proper party such amount out of the escrow fund as is specified in such joint written instructions or final order instruction.

*This action by JAKS against St. Croix:*

On January 6, 2017, JAKS filed a petition under Iowa Code section 626.33 (2017) against St. Croix asking the court to enter an order declaring JAKS has a valid and enforceable lien against the escrow, that its lien is a first and superior lien on the escrow funds, that its lien "hereby forecloses any other interests of St. Croix in and to the escrow funds," that St. Croix "is forever barred" from asserting any right to the escrow funds "to the extent such funds are required to satisfy the judgment," and that JAKS is "entitled to foreclose its lien and collect" from the escrow funds.      St. Croix answered, denying the escrow funds belonged to St. Jude as they were subject to the asset purchase and escrow agreements.

On March 28, 2017, JAKS and St. Jude entered into a "Partial Release Agreement," which states in part:

> WHEREAS, St. Croix's open claim notice is meritless and has been and continues to be asserted by St. Croix to delay, burden, and add expense to St. Jude and JAKS;
> WHEREAS, without waiving their respective rights to challenge St. Croix's open claim notice on existing grounds, and solely as an effort to mitigate additional delay, burden, and expense caused by St. Croix, the parties now enter this partial release agreement as an instrument for annulling, negating, and otherwise rendering unenforceable St. Croix's open claim notice in its entirety;
> . . . .

St. Croix was not a signatory of the partial release.

JAKS and St. Croix filed cross-motions for summary judgment. After hearing arguments, the district court ruled: "Given that [St. Croix's] open claim notice remains pending, the escrow agent is not authorized to release any funds in the escrow account to JAKS." Further, the court observed:

> Any questions of whether JAKS'[s] claims against St. Croix arise under the Master Lease and are subject to the [asset purchase

agreement's] indemnification provisions are not currently before this court. St. Jude, which is not a party to this action, is a necessary party to any determination of its indemnification obligations under the [asset purchase agreement]. Further, the [asset purchase agreement] and escrow agreement both have mandatory arbitration provisions.

The district court concluded:

> Given the open claim notice, a finding that JAKS is entitled to some portion of the escrow funds requires an adjudication of the rights between St. Croix and non-party St. Jude. Given the [asset purchase agreement's] mandatory arbitration provisions, this court is not the appropriate forum to render any such decision. To the extent that St. Jude, or its creditor JAKS, believe the open claim notice is invalid, this is not the appropriate forum for adjudication of rights under the [asset purchase agreement] or escrow agreement. Rather, St. Jude is required to arbitrate the matter with St. Croix pursuant to the terms of these agreements.
> Likewise this court is not the proper forum to adjudicate whether the partial release executed by JAKS and St. Jude invalidates St. Croix's claim to the escrow funds.

JAKS appeals.

## II. Scope and Standard of Review.

We review summary judgment motions for corrections of errors at law *Andersen v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018). Summary judgment is appropriate "if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). We examine the record in the light most favorable to the nonmoving party and determine whether any material fact is in dispute. *Andersen*, 913 N.W.2d at 535. If there are no material facts in dispute, we determine whether the district court correctly applied the law. *Id.*

**III. Discussion.**

On appeal, JAKS asserts the district court erred: (1) in ruling it was not the proper forum to determine St. Croix's indemnification rights under the asset purchase and escrow agreements; (2) in finding St. Jude to be a necessary party to the determination of the indemnification obligations under the asset purchase and escrow agreements; (3) in adjudicating St. Croix's ownership rights to the escrow fund under the asset purchase agreement; and (4) in failing to declare JAKS's rights to $350,000 of the escrow fund as superior to St. Croix's interests.

The basis of JAKS's claim in equity against St. Croix is Iowa Code sections 626.32 and 626.33. JAKS seeks a declaration that its interest in the escrow fund is superior to St. Croix's interest and that its lien "hereby forecloses any other interests of St. Croix in and to the escrow funds."

Section 626.32 provides:

> When an officer has an execution against a person who owns property jointly or in common with another, such officer *may levy on and take possession of the property owned jointly or in common,* sufficiently to enable the officer to appraise and inventory the same, and for that purpose shall call to the officer's assistance three disinterested persons, which inventory and appraisement shall be returned by the officer with the execution, and shall state in the officer's return who claims to own the property.

(Emphasis added.) Section 626.33 then provides:

> The plaintiff shall, from the time such property is so levied on, have a lien on the interest of the defendant therein, and *may commence an action by equitable proceedings to ascertain the nature and extent of such interest and to enforce the lien*; and, if deemed necessary or proper, the court may appoint a receiver under the circumstances provided in the chapter relating to receivers.

(Emphasis added.) Thus, ownership rights of the escrow fund are at issue.

In its statement of "facts" JAKS writes:

Only three parties have any claim to the escrow fund: JAKS, St. Croix, and St. Jude. JAKS and St. Jude agree that JAKS is entitled to $350,000 of it. St. Croix is the only challenger and its claim is entirely contingent upon whether its self-serving 2016 open claim notice for indemnification is valid. Had the district court dealt squarely with the question of the enforceability of St. Croix's baseless indemnity claim, it would have ruled in JAKS' favor. Instead, the district court concluded it lacked jurisdiction.

### A. Jurisdiction.

JAKS contends the "district court rendered its decision on jurisdictional grounds." It asserts the court erred in concluding the arbitration clauses of the asset purchase and escrow agreements between St. Jude and St. Croix deprived the court of jurisdiction. JAKS then claims that because St. Croix admitted jurisdiction in the instant action, the court should conclude it waived any claim to arbitration.

JAKS's use of the term "jurisdictional" is imprecise. The subject matter jurisdiction of a district court is defined by the Iowa constitution and statutes.[2] *See Ney v. Ney*, 891 N.W.2d 446, 450 (Iowa 2017) (noting Iowa Const. art. V, § 6). In Iowa, we distinguish between subject matter jurisdiction and the authority to hear a particular case. *Schaefer v. Putnam*, 841 N.W.2d 68, 80 n.13 (Iowa 2013). "Subject matter jurisdiction is 'the authority of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.'" *Id.* (citation omitted).

---

[2] Iowa Code section 602.6101 provides:

A unified trial court is established. This court is the "Iowa District Court". The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body. The district court has all the power usually possessed and exercised by trial courts of general jurisdiction, and is a court of record.

Statutorily, the district court has subject matter jurisdiction of a section 626.33 claim. *See id.* ("Subject matter jurisdiction is distinct from a court's authority to hear a particular case."). Because subject matter jurisdiction is conferred by the constitution or by statute, the parties cannot confer subject matter jurisdiction nor waive it. *Id.*

However, parties are able to waive the authority of the district court to hear a particular case. *See Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989) ("A court may have subject matter jurisdiction but for one reason or another may not be able to entertain the particular case. In such a situation we say the court lacks authority to hear that particular case."). St. Croix admitted "jurisdiction and venue are proper" in the Polk County district court. But St. Croix's admission to jurisdiction and venue as proper is not equivalent to a waiver of arbitration.

In its answer, St. Croix "affirmatively state[d] that the escrow funds do not 'belong' to St. Jude. The escrow funds are subject to the terms of a May 21, 2015 asset purchase agreement and escrow agreement." St. Croix also stated it "intend[ed] to rely upon such other defenses as may become legally available . . . or become apparent." Two months later, JAKS and St. Croix filed cross-motions for summary judgment. St. Croix's summary judgment motion states, "St. Jude is not the owner of the escrow funds. Instead, the undisputed facts demonstrate that the escrow funds are subject to a contractual indemnification claim asserted by St. Croix."

The applicable principles to determine if there has been a waiver of arbitration has been summarized as,

> "The essential test for waiver of arbitration requires conduct or activity inconsistent with the right to arbitration and prejudice to the party claiming waiver." Factors relevant to an assessment of prejudice include the delay in the moving party's request for arbitration and the extent of the moving party's trial-oriented activity. Prejudice can be shown by "lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration." We have stated that evidence of waiver must be compelling.

*Wesley Ret. Servs., Inc., v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 30 (Iowa 1999) (citations omitted). Here, St. Croix should have identified the arbitration obligations in an affirmative defense, but only a short time (two months) passed after filing their answer before it raised the arbitration provisions in their motion for summary judgment. We also find it significant that JAKS was a non-signatory to the agreements, and JAKS did not suffer substantial expense or time as compared to having the issue raised near the time of trial. We acknowledge JAKS underwent some pretrial discovery, but we are unable to say there is compelling evidence of waiver. Accordingly, we conclude arbitration was not waived by St. Croix.

**B. St. Jude is a necessary party to a determination of the indemnification obligations under the asset purchase and escrow agreements.**

*1. Necessary party defined.*

St. Croix's motion for summary judgment contended JAKS is trying to subvert the asset purchase and escrow agreements by this litigation because the agreements between St. Jude and St. Croix require binding arbitration and St. Jude is a necessary party.

We begin with Iowa Rule of Civil Procedure 1.234(2):

> A party is indispensable [i.e., a necessary party] if the party's interest is not severable, and the party's absence will prevent the

court from rendering any judgment between the parties before it; or if notwithstanding the party's absence the party's interest would necessarily be inequitably affected by a judgment rendered between those before the court.

If a party is a necessary party, "the court shall order the party brought in." Iowa R. Civ. P. 1.234(3). Before we can determine if St. Jude is a necessary party we must consider the context of this litigation.

### 2. Escrow Agreement.

There is no dispute the escrow fund initially consisted of $900,000 received by the escrow agent "pursuant to section 2.5 of the [asset] purchase agreement," which was to be held and disbursed according to the terms of the escrow agreement. Disbursement of the escrow fund is governed by Article III of the escrow agreement. As set out earlier in this opinion, section 3.1.4 provides, in part:

> [I]f on or before the final disbursement date, the escrow agent shall have received from [St. Croix] written notice of any pending claim or claims for indemnification pursuant to Article 10 of the purchase agreement *(an "open claim notice"), the escrow agent shall reserve within the escrow fund, and withhold from disbursement to the representative . . . the amount specified in such open claim notice for so long as the open claim notice has not been withdrawn* by [St. Croix] . . . .

(Emphasis added.) There is an outstanding open claim notice filed by St. Croix.

### 3. Claims subject to arbitration.

Controversies about disbursement of the escrow fund are governed by section 9.5, which states "[a]ny dispute, controversy or claim arising out of or relating to this escrow agreement, or breach thereof, shall be settled by binding arbitration."

Iowa Code section 679A.2(4) provides:

An action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application for an order to arbitrate has been made under this section or, if the issue is severable, the stay may be made with respect to the part of the issue which is subject to arbitration only. When the application is made in such an action or proceeding, the order for arbitration shall include the stay.

Article 9 of the asset purchase agreement provides for the assumption of liabilities and excluded liabilities and requires "[a]ny dispute, controversy or claim arising out of or relating to this agreement" to be settled by binding arbitration. Article 10 governs the terms for, limitations on, and procedures for indemnification. Section 12.7 of the asset purchase agreement states:

This agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns,[3] but *neither this agreement nor any of the rights, interests or obligations under this agreement or any other transaction document shall be assigned by any seller* [St. Jude] . . . *without the prior written consent of the buyer* [St. Croix] . . . .

(Emphasis added.)

*4. The claims in this action.*

JAKS's action pursuant to Iowa Code section 626.33 was intended to determine St. Jude's interest in the escrow account so JAKS could execute upon the same. St. Croix argues that as the depositor it is the sole owner of the monies in the escrow account. *See Mohr v. Joslin*, 142 N.W. 981, 983 (Iowa 1913); *see also In re Tory Lint Constr., Inc.*, No. 99-1005-CH, 2000 WL 35798997, at *5 (Bankr. S.D. Iowa July 14, 2000) ("It is well settled in Iowa, that title to property

---

[3] Section 10.4 of the escrow agreement states: "This escrow agreement shall inure to the benefit of, *and be binding upon*, the parties hereto and their successors and assigns, except as is expressly provided to the contrary herein." (Emphasis added.)

placed in escrow does not pass until full performance of the conditions required by the escrow agreement."). The district court agreed St. Croix was the owner of the escrow funds as the depositor. We conclude this is an issue to be resolved by the arbitrator, if at all.

We acknowledge St. Croix's open claim notice to the escrow agent that admits, in essence, JAKS may have a claim to some of the monies. The open claim notice states in part,

> At this time, the buyer does not know the amount of the claim, but believes in good faith that the amount of the foregoing claim may not exceed the amount of the remaining escrow fund. Accordingly, the buyer hereby requests that in accordance section 3.1.2 of the escrow agreement, that the escrow agent withhold from disbursement to the representative any disbursements until such time as the buyer and the representative deliver a disbursement notice (as defined in the escrow agreement) to the escrow agent.

In a July 12, 2016 letter and claim for indemnification sent to St. Jude, counsel for St. Croix stated, in part:

> In connection with the agreement, on May 19, 2015, [St. Jude] and [St. Croix] (the "sub-tenant") entered into the Urbandale Sublease pursuant to which the sub-tenant leased from [St. Jude] a portion of the premises covered by the Master Lease. As you know, [St. Jude], the lessee under the Master Lease, in May of 2016 abandoned the premises with respect to which the Master Lease relates, ceased paying rent under the Master Lease and was notified by the current owner, JAKS . . . that [St. Jude] is in breach of the Master Lease and is in default in the payment of rent under the Master Lease. As you also know from [JAKS's] notice and our discussions, [JAKS] has notified us, in our capacity as the sub-tenant, that [JAKS] is of the view that the sub-tenant is fully responsible for all of the obligations of [St. Jude] to [JAKS] pursuant to the Master Lease. We have disputed any such liability other than our obligation to pay [St. Jude] rent in accordance with the terms of the Urbandale Sublease. Counsel for [JAKS] has suggested that it does not want to receive our rent under the Urbandale Sublease until there is a full and final settlement of its dispute with [St. Jude] under the Master Lease and us as the sub-tenant. Accordingly, as we have explained to you, we will accrue, and reserve for on our books, all

remaining rent payments to be made pursuant to the Urbandale Sublease until such time as we are released and discharged in full by [JAKS] on terms satisfactory to us.

While the exact amount of any claims by [JAKS] against [St. Croix] as the sub-tenant and alleged co-obligor under the Master Lease cannot be known at this time given [JAKS's] obligation (which it has acknowledged) to mitigate damages caused by [St. Jude's] breach of the Master Lease, such damages may easily exceed the escrow amount (approximately $540,000) remaining in escrow with the escrow agent. Accordingly, we are today delivering to the escrow agent an open claim notice (as defined in the escrow agreement) with respect to the entire amount remaining in escrow. A copy of the open claim notice is attached.

It is clear by the open claim notice, St. Croix is attempting to protect its interests in the escrow funds, and JAKS desires to execute upon $350,000 of the funds to the extent St. Jude has an interest in the escrow funds. If the district court had ordered that St. Jude be brought in as a party it would have been unnecessary to determine the current owner of the escrow funds—although ownership may bear upon the arbitrator's decision.

Thus, to grant the relief sought in this action, the competing and disputed claims to the escrow funds must be resolved and are subject to arbitration.

*5. Confession of judgment and "consent and authorization."*

JAKS argues the issues need not be arbitrated notwithstanding the lack of an assignment of arbitration rights because St. Jude confessed to judgment in favor of JAKS for,

indebtedness aris[ing] out of a lease agreement entered into on or about July 16, 2014, together with a consent to sublease, dated May 21, 2015, both of which defined St. Jude's obligations, including rents, with respect to a certain office space . . . . This confession of judgment is entered pursuant to the terms of a written settlement agreement between St. Jude and JAKS.

Further, St. Jude consented to the clerk executing on the judgment "immediately upon application by JAKS."

JAKS argues St. Jude also issued a "consent and authorization," directing St. Croix "to issue a disbursement to JAKS" in the amount of $350,000 "to be made from the escrow funds held by St. Croix" in the escrow fund.

The difficulty with JAKS's reliance on the confession of judgment and "consent and authorization" is there is nothing in the summary judgment record suggesting St. Croix provided written consent to St. Jude's assignment of interest in the escrow fund to JAKS, as provided by section 12.7 of the asset purchase agreement. Moreover, at oral argument JAKS acknowledged it did not receive an assignment of St. Jude's right to arbitrate to resolve disputes over the escrow funds by binding arbitration.

Additionally, JAKS was not a party to the agreements, and St. Croix cannot require JAKS to submit to arbitration any of its disputes. *See Hawkins/Korshoj v. State Bd. of Regents*, 255 N.W.2d 124, 127 (Iowa 1977) ("A party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

Without the assignment of the rights to arbitrate, the relief JAKS seeks cannot be afforded absent St. Jude being joined as a party—notwithstanding the confession of judgment and "consent and authorization." This is true even if there is no merit to St. Croix's claim. Iowa Code § 679A.2(5) ("An order for arbitration shall not be refused on the ground that the claim lacks merit or because any fault or grounds for the claim sought to be arbitrated have not been shown."). Accordingly, we agree with the district court that St. Jude is a necessary party to

any action to determine the rights to the funds in the escrow account under the asset purchase and escrow agreements.

Thus, the only manner in which JAKS can obtain the relief it requests—a determination of St. Jude's interest in the escrow account—is for St. Jude to be added as a party and to permit arbitration to proceed between St. Jude and St. Croix. Otherwise, the court would have to conclude that St. Jude only has an undetermined claim to the funds in the escrow account and execution may not lie.

### *6. Relief to be granted.*

The district court granted summary judgment for St. Croix, dismissing the suit, but the proper relief for failure to add a necessary party is for the court to order the necessary party to be brought in.[4] *See* Iowa R. Civ. P. 1.234(3) ("If an indispensable party is not before the court, it shall order the party brought in."). If St. Jude is brought in complete relief can be granted. *See Lovrien v. Fitzgerald*, 49 N.W.2d 845, 850 (Iowa 1951) (concluding "the established rule that equity, having taken jurisdiction, will do whatever is necessary to grant complete relief, to avoid a multiplicity of suits, and if necessary will retain jurisdiction"). Because the district court erred in failing to order St. Jude to be brought into the action we must reverse. Upon St. Jude being brought into the suit, the procedures in Iowa Code section 679A.2 may permit an order for arbitration and a stay of the litigation pending arbitration.[5]

---

[4] We also observe the dismissal was apparently with prejudice.

[5] The arbitration can only resolve the rights between St. Jude and St. Croix. Subsequent to arbitration, when St. Jude's interest in the escrow funds is determined the court may then order such relief as may be appropriate pursuant to Iowa Code section 626.33.

**IV. Conclusion.**

We conclude St. Croix did not waive arbitration procedures, St. Jude is a necessary party to this action, and the proper relief for failing to bring in a necessary party is for the court to order the party brought in. Because the court dismissed the action, we reverse and remand to the district court with directions to order St. Jude brought into the suit.

**REVERSED WITH DIRECTIONS.**